THE STATE v. GUY, *Appellant.*

1.    **Change of Venue for Prejudice of Inhabitants:** DECISION OF TRIAL COURT CONCLUSIVE. The Supreme Court will not interfere with the action of the trial court in refusing a change of venue asked on the ground of prejudice on the part of the inhabitants of the county, after evidence heard on both sides, unless it appears that palpable injustice has been done.

2.    **Evidence:** ADMISSIONS OF THE ACCUSED. Voluntary statements made by the accused while under arrest, if not drawn out by threats, promises or other improper means, are admissible in evidence against him.

3.    **Remarks by the Prosecuting Attorney at the Trial.** Not every indiscreet remark made by the prosecuting attorney, in the presence of the jury, will furnish ground for a new trial. Certain

remarks made in the present case are examined by the court and held not to warrant a reversal.

4. **Evidence of Threats.** Upon a trial for murder a witness was permitted to testify that shortly before the killing took place, she heard the defendant say: "I'll kill him before day, God d—n him." *Held,* that the evidence was properly admitted, though the name of the deceased was not mentioned by defendant. Whether the threat referred to him or not, was for the jury to determine.

*Appeal from Jefferson Circuit Court.*—Hon. Louis F. Dinning, Judge.

*Williams & Green* for appellant.

*J. L. Smith,* Attorney-General, and *T. H. McMullen,* Prosecuting Attorney of Jefferson county, for the State.

Henry, J.—At the January term, 1879, of the Jefferson circuit court, the defendant was indicted, charged with having murdered Aaron McPete on the night of the 25th day of December, 1878. He was tried at the same term, convicted of murder in the first degree, and sentenced to be hanged. From the judgment he has appealed to this court.

A motion was made to quash the indictment on the ground that it charged that the defendant made the assault upon Aaron McPete, and shot Aaron McPeto. An examination of the original indictment which, by agreement, was sent here with the transcript, has satisfied us that there is no foundation in fact for the objection. Where the name in the indictment is, by defendant's counsel, taken for McPeto, the final " e " has somewhat the appearance of an " o," but a close inspection shows that it is an " e," in which the upward or finishing stroke is carried higher than where the name elsewhere occurs in the indictment, making it bear a resemblance to the letter " o."

Defendant complains, and assigns it as error, that the court refused his application for a change of venue. His

1. CHANGE OF VENUE FOR PREJU- DICE OF INHABI- TANTS: decision of trial court con- clusive. application was in due form, and alleged that the minds of the inhabitants of Jefferson county were so prejudiced against him that he could not have a fair trial in said county. Evidence was introduced by him to prove the existence of such prejudice, and by the State to show that it did not exist. The finding of the circuit court on that issue is conclusive, and not to be interfered with by this court, unless it appear that palpable injustice has been done.

The State was permitted, against objection of the defendant, to prove by the officer who arrested him, state-

2. EVIDENCE: ad- missions of the accused. ments of the defendant in reply to inquiries made by the officer concerning the difficulty. No threats, or promises or other improper means were employed by the officer to induce the statements, which were, therefore, voluntary and admissible.

The defendant made a statement under oath before the coroner at the inquest, in regard to the killing, and, on the

3. REMARKS BY THE PROSECUTING AT- TORNEY ON THE TRIAL. trial in the circuit court the prosecuting attorney, while the coroner was testifying, exhibited to him the " return of inquest proceedings," and asked him if " Monroe Guy made any statement to him, and if so, under what circumstances?" Defendant's counsel objected, " because any statement made by defendant at the inquest was made when he was not informed of his right to refuse to answer any question, and was without any counsel," whereupon the prosecuting attorney remarked to the defendant's counsel, in the presence of the jury : " The defendant could have told the truth just as well before he consulted counsel as he could afterward ;" and, for this remark of the prosecuting attorney, it is urged that the judgment should be reversed. How it could have prejudiced the defendant, it is impossible to conceive. It must be assumed that a jury is composed of men of some intelligence, and that such a side-bar remark would have any influence upon them whatever, is not to be supposed. The cases in which this court has censured

the conduct of prosecuting attorneys, does not warrant the inference that for every indiscretion committed by a prosecuting attorney in the progress of a trial in a criminal cause, this court will reverse the judgment.

On cross-examination of the defendant, who testified in his own behalf, the prosecuting attorney, holding in his hand the report of the proceedings of the inquest upon McPete, opened at Monroe Guy's testimony, asked him the following question : " Were you sworn as a witness at the inquest held on Aaron McPete ?" to which defendant's counsel made the same objection that was made when the coroner was interrogated in relation to that testimony. Thereupon the prosecuting attorney stated to the court, in the presence of the jury, that he did not desire to cross-examine the witness on the subject of his testimony before the coroner, but simply to authenticate the signature, and then, if there were statements in such testimony contradictory of the evidence now given by the witness, to read the same to the jury to impeach the credibility of the witness; that the defendant having voluntarily become a witness, could be impeached, or his credibility attacked as any other witness. This, it is contended, was misconduct on the part of the State's attorney, prejudicial to the defendant, for which the judgment should be reversed. In what the impropriety of this statement consists, we are unable to perceive. The attorney did not state that defendant's testimony before the coroner would contradict his evidence on the trial. If he was wrong in the legal proposition he stated, the court promptly corrected him by sustaining the objection made by defendant's counsel. There was nothing reprehensible in the remark made by the attorney to the court.

It appears from the evidence that on the night of December 25th, 1878, the colored people of the town of De Soto, held a church festival, which defendant and McPete attended. While in the church defendant and McPete quarreled. A few words passed between them, but nothing

then occurred to indicate that the quarrel would be re-
newed, or that anything serious would ensue. Immediately
after the altercation, which was witnessed by defendant's
mother, who was sitting near them, she called Monroe to
her and said to him, " Don't have any fuss here to-night,
Monroe," and defendant replied, " I was'nt doing anything
to him." After this defendant left the church and procured
the pistol with which he shot McPete. His mother testified
that he went on an errand for her, but however that may
be, he also borrowed the pistol while he was out.

Maria Breckenridge testified that after the mother of
defendant called him to her, and told him to have "no
4. EVIDENCE OF fuss," he left his mother, and, passing near
THREATS. witness, she heard him say, " I'll kill him
before day, God d—n him." To the introduction of this
evidence defendant objected, because it did not appear that
the threat related to McPete. Whether it did or not, it was
for the jury to determine, and the court properly overruled
the objection. The testimony of Maria Breckenridge was,
that there was but a brief interval of time between the
quarrel and the threat.

After the defendant returned to the church with the
pistol, which was subsequent to the threat testified to by
Maria Breckenridge, defendant and McPete had the diffi-
culty outside of the house, which resulted in the death of
McPete. No one saw the rencounter, but defendant ad-
mitted that he shot McPete, claiming that McPete as-
saulted him with a knife, and was striking at him with the
knife when the shot was fired. I have not endeavored to
state the substance of any more of the evidence than is
necessary to be considered in connection with the errors
assigned. The jury found the defendant guilty, and, as
there was sufficient evidence to warrant their verdict, we
have only to pass upon the rulings of the court which are
complained of by defendant.

Robert Bruce was introduced as a witness for defend-
ant, who proposed to prove by him that in the afternoon

of the day on which the homicide occurred, he met McPete in De Soto, and asked him if he was going to the festival. He replied that he was. Witness then remarked to him, "There is a bad crew in this town," and deceased replied: "I've got a bad crew too, coming on behind." Witness said, "Aaron, don't get drunk," in answer to which Aaron said: "I won't get drunk. I'm going to have my fun, and the first nigger that fools with me, I'll put him to his end;" that this threat was communicated to the defendant by the witness about a half hour after it was made. The court sustained an objection to the introduction of this evidence, and of that ruling defendant complains. The remark of the deceased was not a direct threat, and the conditional threat was against no particular person. It was but the idle boast of a braggart, and why the witness communicated it to the defendant, if he did, is not explained, and cannot be imagined. What connection had this threat, if it is to be so regarded, with the conflict between the defendant and the deceased? Or what possible light could it have thrown upon the rencounter? It would have prejudiced rather than benefited the defendant's case, for it would have given foundation for the theory that, so far from avoiding the deceased on account of the threat, he had sought and provoked the difficulty. In no view to be taken of the case was the evidence admissible. The testimony warranted the verdict; the court committed no error on the trial of the cause, which was conducted throughout with the utmost fairness. No objection is urged to the instructions given for the State. All that defendant asked were given, and the instructions given as fully and correctly declared the law, applicable to the facts, as any instructions in a case of murder, that we have had occasion to consider. All concurring, the judgment is affirmed.

AFFIRMED.