Argued April 13; decided November 9, 1896.

## STATE v. POMEROY.
(46 Pac. 797.)

1. DISCRETION AS TO CHANGE OF VENUE.—Under section 1222, Hill's Code, authorizing the court to order the place of trial changed when it appears by affidavit that a fair and impartial trial cannot be had, the granting of such order rests in the sound discretion of the trial court, and in this case it does not appear that this discretion was abused to any substantial injury of the accused.

2. EVIDENCE—DIRECTING VERDICT.—Where there is any evidence that fairly tends to show guilt it is the duty of the court to submit to the jury the question of defendant's guilt or innocence *(State v. Jones*, 18 Or. 260, cited and approved), and in this instance the testimony justified a submission to the jury.

3. INFERENCE FROM POSSESSION OF STOLEN PROPERTY.*—The inference from the possession of stolen property is entirely one of fact—it never rises to the dignity of a conclusive presumption of guilt, and is strong or weak according to the surrounding circumstances: *State v. Hale*, 12 Or. 352, cited and approved.

4. RECEIVING STOLEN PROPERTY.—On a prosecution for receiving and concealing stolen goods, under section 1774 of Hill's Code, the fact that defendant secreted and harbored the thieves, so as to aid them to escape arrest, thereby rendering himself amenable as an accessory to the larceny, is no defense, if he also received and concealed the property, knowing it to be stolen.

*See also *State* v. *Huffman*, 16 Or. at page 24, and *Meyer* v. *Thompson*, 16 Or. 194.—REPORTER.

5. INVADING PROVINCE OF JURY—EXPRESSION OF OPINION BY TRIAL JUDGE.—An instruction that the jury have no right to reject the testimony of the wife and daughter of the accused simply because it came from a source in which there would be strong motives to give the "most favorable coloring possible" to the facts on behalf of the accused, is prejudicial error, as an expression of opinion on the motives of the witnesses.

From Washington:   THOS. A. MCBRIDE, Judge.

Calvin Pomeroy was indicted and convicted in Washington County on a charge of buying, receiving, concealing, and attempting to conceal stolen property. The errors assigned are:   First, the denial of the motion for a change of venue; second, the refusal of the court to instruct the jury that there had not been sufficient evidence produced to sustain a conviction, and to direct them to return a verdict of not guilty; and, third, the giving and refusing to give certain other instructions.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. Thos. H. Tongue.*

For the State there was a brief and an oral argument by *Mr. W. N. Barrett,* District Attorney, and an additional oral argument by *Mr. Cicero M. Idleman,* Attorney-General.

Opinion by MR. JUSTICE WOLVERTON.

I.   The motion for a change of venue is based upon the affidavits of the defendant and his counsel, which show, in substance, that at different times prior to the commission of the alleged offense charged in the indictment three sons of the defendant had been convicted of petit larceny committed within the county; that subsequent to such convictions there had been a great number of similar crimes committed therein; that a great many people, with-

out any knowledge on the subject, or touching the identity of the offenders, did not hesitate to publicly assert that they were committed by some member of the defendant's family, and that the defendant himself was guilty of such things, without the slightest evidence upon which to base the assertion; that it had been charged that one of the sons of defendant was concerned in the theft of the goods which defendant is accused of concealing; and that in consequence thereof the feeling in the county became so strong that in different parts thereof the people talked quite freely of lynching the defendant, and in some places expressed a determination to do so; that fictitious, false, and exaggerated reports of the manner of defendant's arrest and of his conduct and demeanor prior thereto had been persistently and extensively circulated throughout the county; that such things had been talked of in Hillsboro, and, as the informants believe, among the jurors, and that by reason thereof a widespread and deep-seated public prejudice sprang up against the defendant and his family, to such an extent that it is believed a majority of the people of the county who have heard of the matter have, without any knowledge of the facts, formed an opinion, and many of them have expressed it to the effect that the defendant is guilty of the crime charged; and that by reason of all these facts and circumstances the defendant could not expect a fair and impartial trial within the county.    Counter affidavits were filed by the state, showing, in effect, that the crime of which the defendant is charged was committed in the western part of the county; that while there had been some discussion of the alleged crime in and around Greenville, West Union, and Forest Grove, yet there are large sections of the county where the defendant and his family are scarcely known, and the incidents surrounding the commission of the crime but little talked of, if at all, and that many people in the county

have never heard of the alleged crime with which defendant is charged.

Upon the showing thus made the motion was overruled. It is usually regarded that such a motion lies largely, if not exclusively, within the sound discretion of the trial court, the exercise of which is judicial in its nature, and is subject to review only when abused to the prejudice of the applicant, and that fact is in some way made to appear: 3 Am. & Eng. Enc. Law (1st Ed.), 108. Our statute (Hill's Code, § 1222) provides that "the court may order the place of trial to be changed  *  *  .*  when it appears by affidavit, to the satisfaction of the court, that a fair and impartial trial cannot be had," etc. Under similar statutes it has been held that the exercise of the power granted by this section is within the sound discretion of the trial court: *State* v. *O'Rourke,* 55 Mo. 440-446; *State* v. *Sayers,* 58 Mo. 587. In *State* v. *Whitton,* 68 Mo. 91, upon a question of alleged prejudice, the finding of the trial court was held to be conclusive. In *State* v. *Guy,* 69 Mo. 432, the court say: "The finding of the Circuit Court on that issue (question of prejudice) is conclusive, and not to be interfered with by this court, unless it appear that palpable injustice has been done." Again the same court, in *State* v. *Burgess,* 78 Mo. 235, say: "The trial of the issue made on a petition for a change of venue is by the court, and unless manifest error occur on the trial of that issue, to the prejudice of the accused, we cannot interfere with the finding of the court. There was evidence to sustain the finding." In *State* v. *Brownfield,* 83 Mo. 451, the court, in passing upon facts very similar to those suggested by the case at bar, say: "In this state of the evidence we cannot say that the court, in overruling the application of defendant, abused its discretion, and it is only when it appears that such discretion has been palpably abused that we can interfere under the rul-

ing of this court." See also *State* v. *Hill, 72* N. C. 352; *Watson* v. *Whitney,* 23 Cal. 375; *Hyde* v. *Harkness,* 1 Idaho 601; *State* v. *Hunt,* 91 Mo. 490 (3 S. W. 858); *People* v. *Yoakum,* 53 Cal. 566; *People* v. *Perdue,* 49 Cal. 425; *People* v. *Mahoney,* 18 Cal. 180. In the case at bar it does not appear that any difficulty whatever was experienced in obtaining an unbiased jury, a circumstance which leads to the conclusion that the accused suffered by the refusal to grant the motion no injustice, so that it is not obvious that there was an abuse of its discretion by the trial court, and its action in that respect will not be disturbed.

2. The evidence adduced at the trial tended strongly to show that John Pomeroy, a son of the defendant, and one John Holcomb stole the goods which defendant is charged with concealing, from the store of Briggs Bros. in the Town of Dilley, Washington County, on the night of March 21, or the morning of the 22d, 1895; that on the morning of the 23d these parties took the goods to the defendant's barn, where they were found about noon of the same day, covered with straw. The thieves were traced to this locality by the track of a horse and buckboard, supposed to be the property of one Lousignont. The horse was found in the barn, and the buckboard under a shed close at hand. E. B. Sappington, a constable, one of the persons instrumental in the apprehension of the accused, being called as a witness for the state, testified as follows: "I took a track of the vehicle that came out of the gate (at Lousignont's), and tracked it as far as Mr. Pomeroy's field or pasture, or a gate that goes into his pasture, in sight of his house. I didn't go any further then, but went back to Greenville." After stating that he procured the assistance of Joseph and Andrew Vaughn, the witness continues: "We went down on the track to the gate and tracked the vehicle inside, and just as we got inside, Joe called my attention to a man coming down

from the barn on a ladder; then we rode as fast as possible, we had probably two hundred yards to go to get across a ravine to the barn, and when we got there I got down and opened the gate, and there was a man standing right on the inside, Mr. Pomeroy (the defendant). He went on the inside of the house, and I heard Joe Vaughn ask him who drove that rig in there, and he said he didn't know, * * * and he went on towards the house, and I caught up with him, and told him we were hunting for Holcomb, and asked him if he was there, and he said he didn't know whether he was or not, and it was none of our business; he went inside the house and came out with a shot gun, and told us not to come in, he had enough of that kind of foolishness around there; and for us to get out of there; just then Andrew Vaughn, who had gotten off the road, came across hollowing to us, and I turned around and saw two men running from behind the barn across the field going west." The witness recognized one of them as Holcomb. After relating his experience in giving chase to the fugitives he continues: "I took up my watch between the barn and the house; after a while Mr. Pomeroy came out, and said he would go and fix his barn, or something, I don't know what. He went on the inside, and I kept on the outside. I got as close to the barn as I could, and I heard him go around to that corner (in proximity to the goods), and work in the straw. Of course I couldn't see; he would work there a little while, and he would come out with a board and throw it down and go back in again. He made several trips, and I could hear him in this straw. I heard the straw moving and him going in there, and after while he came out and said he would have to go to Greenville." After the accused left, the witness went into the barn and found the goods. Among them were a hat and two overcoats belonging to John Pomeroy and John Holcomb. Joseph Vaughn gave

testimony of a like nature, except he describes the accused when they first saw him as being well up to the top of the ladder in an open gable of the barn; that he turned around and looked over his shoulder towards them and came tearing down.

H. P. Ford, the sheriff, who had come up while the accused was at Greenville, testified: "When he returned home, I asked him whose horse and wagon that was, and he disclaimed any knowledge of knowing whose it was, said he didn't know. I asked him who had been there, and he said there hadn't been any one there. I asked him directly if his son John and John Holcomb had not been there, and he said they had not that he knew of. I told him there was quite a quantity of goods stored out there, and it seemed to me very strange a horse and wagon would be there and he didn't know whose it was, nor who brought it there. Well, he said it might seem strange, but he didn't, he didn't know a thing about it, there hadn't been a soul on the place that he knew of during that night, that is excepting his own family." Eugene C. Hughes testified to a conversation he had with the accused about the time he started to Greenville, as follows: "I asked him then if John Holcomb wasn't there that night, and he said if he was he didn't know it, and I said, 'Was your son John there?' and he said, 'No, I haven't seen him for three months.'" The defendant, in explanation of his presence upon the ladder when first seen, gave evidence tending to show that he was up there for the purpose of readjusting some of the rafters which had been displaced by the wind the night before, and was coming down when seen by Sappington and Vaughn. In this he was corroborated by his daughter, who, as they testified, assisted him in replacing and securing the rafters. The boards which he carried out he explained were taken in and used by him in getting the rafters in place. The defendant, his wife,

and daughter all testified that John Pomeroy and John Holcomb came there in the morning about six o'clock and wanted breakfast; that the accused objected to their being there, but that the wife gave them their breakfast, and they left the house about seven; while they were at breakfast the accused and his daughter were engaged in milking some cows at the barn. John Pomeroy's wife was stopping with defendant's family at the time. John himself and Holcomb were fugitives from justice, and defendant had heard that officers had been watching his house and premises before for the purpose of apprehending them. He denied all knowledge of the goods prior to the time that he was informed of their discovery by the officers.

Among other instructions asked for, the defendant's counsel requested the court to give the following, viz: "There has been no sufficient evidence to sustain a conviction of guilty as charged in the indictment, and I therefore instruct you to render a verdict of not guilty." All the evidence produced on the trial is here in the bill of exceptions, and we are asked to pass upon it, and say whether it is sufficient to warrant a conviction of the crime charged. It is strenuously insisted that the State has not shown that the accused had any knowledge whatever of the presence of the goods in his barn, and, further, that the evidence is too meager and unreliable from which to determine that he either received or concealed, or attempted to conceal, them. Knowledge that the goods were stolen, and concealment, or an attempt to conceal them, are essential elements that go to constitute the crime with which the defendant is charged, and the rule seems to be that where there is some evidence pertinent to go to the jury upon the issue it becomes a question of fact for them to determine, and it is not permissible for the court to invade the province of the jury in respect thereto. As put by

BLACK, J., in the *State* v. *Glahn*, 97 Mo. 689 (11 S. W. 262), "In the disposition of the question whether the trial court should have directed a verdict for the defendant, it is to be remembered that it is not our province to try the case on its facts. * * * It is sufficient for our purpose to determine what inferences may be drawn from the evidence. It is, of course, the duty of the trial court to say whether there is any evidence entitling the State to go to the jury, and the ruling upon the question is open to review here. The rule, even in criminal cases, is that before this court will relieve on the ground that the verdict is not supported by the evidence, there must be either a total failure of evidence, or it must be so weak that the necessary inference is that the verdict is the result of passion, prejudice, or partiality." This language is approved in a later case *(State* v. *Howell,* 100 Mo. 659, 14 S. W. 4) after an exhaustive review of the evidence. In *State* v. *Kearney,* 21 Or. 504 (28 Pac. 628), STRAHAN, J., says: "At the conclusion of the State's evidence, the defendant might have asked the court to direct the jury to acquit him if there were no evidence whatever implicating him in the commission of the crime charged." In *State* v. *Jones,* 18 Or. 260 (22 Pac. 840), the same learned judge says: "Where the State proves enough to require the defendant to produce evidence in his own behalf, such a direction would be improper. As soon as enough is shown to require the defendant to enter upon his defense and to introduce evidence, it is the province of the jury to weigh the evidence and to pass upon the credibility of the witnesses. A direction to acquit in such a case would be an invasion of the province of the jury, and could not be sustained." As bearing upon this question see also *State* v. *Clements,* 15 Or. 237 (14 Pac. 410); *State* v. *Daly,* 16 Or. 240 (18 Pac. 357); *Smith* v. *State,* 63 Ga. 90; *State* v. *Glovery,* 10 Nev. 24; *Commonwealth* v. *Cunningham,* 104

Mass. 545. The evidence adduced touching defendant's knowledge of the goods and their character as stolen property and his participation in their concealment is wholly circumstantial. With it there is interwoven much that is damaging to the accused, so much so that it was deemed prudent and advisable to introduce proofs in explanation of his acts and demeanor, and of the motives which induced them. We think there was evidence sufficient to go to the jury, and hence it became their exclusive province to determine its effect respecting his guilt or innocence.

3. Much has been said regarding the inference to be drawn from the fact of finding recently stolen property in the possession of the accused. The inference is one of fact, and not of law, from which the jury may, in connection with all the attending circumstances, determine the guilt or innocence of the accused. It never rises to the dignity of a conclusive presumption of guilt, and is strong or weak according to the character of the property, the nature of the possession, and its proximity in time with the theft: *State* v. *Hale,* 12 Or. 352 (7 Pac. 523); *State* v. *Hodge,* 50 N. H. 510; *State* v. *Graves,* 72 N. C. 482; *State* v. *Walker,* 41 Iowa 218; *Yates* v. *State,* 37 Tex. 202; *People* v. *Noregea,* 48 Cal. 123. The simple finding of the goods in the barn of defendant to which it was shown other persons had access was but slight evidence that they were even in his possession, but the question whether or not he ever had possession or received or concealed them, or assisted in their concealment, was properly submitted to the jury under appropriate instructions.

4. The court was requested to give the following instructions, and its refusal to give them *in haec verba* is assigned as error: "If a jury is satisfied that whatever the defendant did at the time and on the day that the goods were discovered was done for the purpose of aiding John Pomeroy and John Holcomb to escape from arrest,

and the jury are satisfied that at the time the said John Holcomb and John Pomeroy had committed the crime of larceny in stealing the goods charged in the indictment, and that the defendant knew that said goods had been stolen by John Pomeroy and John Holcomb, then the defendant would be guilty of being accessory to the crime of larceny, and it would be your duty to acquit him." "If the jury has a reasonable doubt whether the defendant, upon the occasion described in the indictment, was endeavoring to shield the persons who had committed the larceny, and assist in their escape, or whether he was engaged in buying, receiving, or concealing, or attempting to conceal, stolen property, then, in that case, also, it would be your duty to give the defendant the benefit of the doubt, and acquit him." "The State cannot split one transaction, and make out of it more than one crime. The defendant could not at the same time be guilty of receiving stolen goods and an accessory after the fact to the crime of larceny, by aiding those who had committed the crime." The crime of receiving, concealing, or attempting to conceal, stolen property is made a substantive offense by the statute (Hill's Code, § 1774), and the defendant was on trial charged with such offense. He may have been guilty at the same time of aiding in the escape of John Pomeroy and John Holcomb, thus rendering himself amenable as an accessory to the crime of larceny, but if he has done those things which are essential to the crime charged, there seems to bè no good reason why one should bar a prosecution for the other. The doctrine of carving can have no application here, as that can only be made available under a plea of former conviction or acquittal. The court quite fully, and very correctly and explicitly, covered the subject by the following instruction: "The defendant cannot be convicted on this indictment for secreting or harboring John Pomeroy and John Holcomb.

If Holcomb and Pomeroy were charged with a crime in Multnomah County, and the defendant, inspired by a desire to aid them to escape arrest, received them, and concealed them with intent to aid them to escape from such arrest, or if you have a reasonable doubt as to whether his conduct was done for that purpose only, he cannot be convicted; but if, with a guilty knowledge that the goods described in the indictment had been stolen, he secreted them with a view of preventing the officers of the law from finding them, and thereby detecting and arresting Holcomb and Pomeroy, the fact that he also desired their escape from arrest on the Multnomah County charge would not be a defence." So the court was not in error in refusing to entertain the charge, as requested.

5. Another instruction is as follows: "Every witness is presumed to speak the truth, but this presumption may be overcome by evidence; and you have a right in considering the testimony of every witness, to consider the manner in which he testifies upon the stand, to consider his motives, and his relationship to the case. In this case the defendant and members of his family have given testimony. You have no right to reject the testimony they have given, simply because it comes from a source in which there would be strong motives to give the most favorable coloring possible to the facts on behalf of the defendant, but you have a right to consider, and you should consider, that testimony the same as you would other testimony, taking into account the relationship of the parties and the motives which may induce them to testify. That is to say, in estimating the value of the defendant's testimony you have a right to consider what he has at stake in this case, the gravity of the charge against him, and the motives which might induce him to misrepresent or speak falsely in regard to it; and you have a right to consider the motives of the other members of

the family, and, after considering these, not only in their own intrinsic light, but in the light of all the testimony in the case, give such testimony the value you consider, under all the circumstances of the case, it is entitled to in coming to a final conclusion." Objection is urged to this instruction as tending to discredit the testimony of the wife and daughter of the defendant, by giving undue prominence to the motives which might induce them to color their testimony with a view to his exculpation, and we think it is well taken. The jury were told in effect that the wife and daughter had strong motives for giving the most favorable coloring possible in behalf of the accused to the facts which they were called to delineate. The vice of this instruction consists in the fact that it is an expression of an opinion by the trial court touching the motives of these witnesses. The jury might have inferred from the language employed that the court not only believed that these witnesses had motives for coloring their testimony, but that such motives were strong for the most favorable coloring possible. The expression in part runs in the superlative, and could hardly have escaped their attention. Motive is a thing itself to be proven, or such facts established from which it may be inferred, and, when disclosed by the testimony, its nature and degree is a fact to be determined, so also is the probability that the witness has indulged it to the impairment of the oath which he has taken to tell the truth, the whole truth, and nothing but the truth. The statute provides that "Every witness is presumed to speak the truth." But the presumption may be overcome. How? "By evidence * * * affecting his character or motives:" Hill's Code, § 683. So the jury must determine whether a motive exists, its nature, and whether or not the testimony of the witness has been colored or warped by it. It all goes to the credibility of the witness, of which they are the exclusive judges: See

*Commonwealth* v. *Barry*, 9 Allen, 276.  Mr. Thompson, in his work on Trials (2 Thompson on Trials, § 2421), says: "It is a rule, applicable alike in civil and criminal cases, that it is error for the judge, directly or inferentially, to express an opinion to the jury, or in their hearing, as to the credibility of a particular witness, or as to the weight which they should attach to his testimony."  As supporting this rule see *McMinn* v. *Whelan*, 27 Cal. 300; *Rice* v. *State*, 3 Tex. App. 451; *People* v. *Christensen*, 24 Pac. 888; *State* v. *Brown*, 76 N. C. 222.  For error of the court below in this particular its judgment is reversed and a new trial ordered.  REVERSED.