Argued at Pendleton November 1, reversed and remanded December 13, 1921.

## STATE v. WILLIAMS ET AL.

(202 Pac. 428.)

**Criminal Law—Motion for Instructed Verdict of Acquittal Equivalent to Demurrer to Evidence, and Should be Allowed Only if There is No Evidence Implicating Defendant.**

1.  A motion for an instructed verdict of acquittal, made at the conclusion of the state's evidence in a criminal case, is equivalent to a demurrer to the evidence, and should be allowed if there is no evidence implicating the defendant in the commission of the crime charged, but should be overruled where the state proves enough to require the defendant to produce evidence in his own behalf, since in such case it is the province of the jury to weigh the evidence and pass upon the credibility of the witnesses.

**Larceny—Where Property Stolen was Found in Defendant's Possession Soon After Theft, the Case is for the Jury.**

2.  Where it appears in evidence upon the trial of one charged with larceny that the identical property or some part thereof alleged to have been stolen was found in the possession of the accused soon after the theft, the case is ordinarily one for the jury.

**Larceny—Possession of Recently Stolen Property must be Personal, and Involve a Conscious Assertion or Possession by Accused.**

3.  To warrant an inference of guilt from possession of recently stolen property, it must further appear that the possession was personal, and that it involved the distinct and conscious assertion or possession by the accused.

102 Or.—20

Larceny—Inference Drawn from Defendant's Possession of Recently Stolen Property is One of Fact and not of Law.

4. The inference that may be drawn from the fact of finding recently stolen property in the possession of the accused is one of fact and not of law, from which the jury may, in connection with all the attending circumstances, determine the guilt or innocence of the accused, and never rises to the dignity of a conclusive presumption of guilt, but is strong or weak according to the character of the property, the nature of the possession, and its proximity in time with the theft.

Larceny—Property Found in Defendant's Possession to Create Inference of Guilt must be Identified as That Stolen.

5. Before an inference of guilt can be drawn from possession of recently stolen property the property in possession of the defendant must be clearly identified as property charged to have been stolen.

Larceny—Evidence as to Defendant's Possession of Property Insufficient for Submission of Case to Jury in View of Lack of Identification.

6. In prosecution for larceny of barbed wire, evidence of defendant's possession of barbed wire similar to that stolen, after the commission of the crime, *held* insufficient for submission of the case to the jury, in view of the state's failure to identify the wire found in defendant's possession as that which had been stolen.

From Grant: DALTON BIGGS, Judge.

In Banc.

On November 8, 1920, the defendant, Charles W. Williams, was jointly indicted with Everett Snyder and Robert M. Williams, and charged with the crime of larceny by stealing twelve spools of barbed wire, the property of Jack Vaughn and Orin Ledgerwood, committed on February 23, 1918. Defendant was tried jointly with his codefendant, Robert M. Williams. The latter was acquitted, but defendant was found guilty and judgment of conviction entered against

---

4. On the question as to whether possession of recently stolen property is evidence of burglary and larceny, see notes in 19 **Ann.** Cas. 1281; 12 **L. R. A.** (N. S.) 199.

5. Admissibility of evidence that one charged with larceny was in possession of property not identified as part of that stolen, see note in 3 **A. L. R.** 1213.

him.   From this judgment defendant prosecutes this
appeal.

At the close of the state's case, the defendant inter-
posed a motion for an order directing a verdict of
not guilty as to defendant, and assigned as a reason
for the motion that "there is no evidence connecting
or  tending to connect the defendant Charles  W.
Williams with the commission of the crime charged
in the indictment."   The action of the Circuit Court
in overruling the motion is assigned as error.

REVERSED AND REMANDED.

For appellant there was a brief and oral argument
by *Mr. A. D. Leedy.*

For respondent there was a brief over the name of
*Mr. I. H. Van Winkle,* Attorney General, with oral
arguments by *Mr. Richard N. Appling,* District Attor-
ney, and *Mr. Errett Hicks.*

McCOURT, J.—1. A motion for an instructed ver-
dict of acquittal, made at the conclusion of state's evi-
dence in a criminal case, is equivalent to a demurrer
to the evidence: *State v. Pender,* 72 Or. 94, 106 (142
Pac. 615).   And if there is no evidence implicating
the defendant in the commission of the crime charged,
such motion when interposed should be allowed, but
"where the state proves enough to require the defend-
ant to produce evidence in his own behalf such a direc-
tion would be improper.   As soon as enough is shown
to require the defendant to enter upon his defense
and to introduce evidence, it is the province of the
jury to weigh the evidence and to pass upon the credi-
bility of the witnesses.   A direction to acquit in such
a case would be an invasion of the province of the
jury, and could not be sustained." *State v. Jones,*
18 Or. 256, 260 (22 Pac. 840).

The question presented requires a review of the evidence introduced by the state, in its case in chief. Jack Vaughn and Orin Ledgerwood bought twelve spools of barbed wire in the fall of 1917 and placed the same by a pile of posts on Ledgerwood's homestead, near the north line thereof. Vaughn saw the wire there in February, 1918, but some time in March following, Vaughn and Ledgerwood discovered that the wire had been taken by some one. Ledgerwood's homestead is located a little more than a mile southwest of the northeast corner of township 11 south of range 28 east of Willamette Meridian. The defendant owns a homestead situated about a mile east of the southwest corner of township 9 south of range 28 east of Willamette Meridian. Defendant also owns what is termed in the testimony, his "old place," which is situated about one-half mile south of his homestead.

In March, 1920, six spools of barbed wire, similar to that which Vaughn and Ledgerwood had lost in February or March, 1918, were discovered lying exposed upon the ground, in a draw or canyon near the north end of defendant's homestead and about a mile from the county road. There was dirt upon the wire and the wooden spools upon which the wire was coiled had become rotten and parts thereof were gone, indicating that the wire had been exposed to the weather for several winters, or at some time had been buried for a considerable period. Vegetation had not grown under the spools. A short time after the wire was first discovered, it appeared that these pieces of rotten wood had been removed and one spool of the wire had been taken and used in the construction of a fence upon defendant's homestead.

At the time the wire disappeared from Ledgerwood's homestead, Everett Snyder, jointly indicted

with defendant, resided upon and owned a homestead
situated about one mile north of Ledgerwood's home-
stead.   Snyder is a brother-in-law of defendant, and
Robert M. Williams, also jointly indicted with defend-
ant, is defendant's brother.

The shortest route of travel from Ledgerwood's
homestead to defendant's homestead is over a trail
in a northwesterly direction, less than two miles to its
intersection with what is known as the Fox-Cotton-
wood Road; thence along the Fox-Cottonwood Road
in an easterly direction to the north of Snyder's home-
stead to what is known as the Trail Road; thence
northeasterly along the Trail Road to the Fox-Hamil-
ton Road; thence along the Fox-Hamilton Road
northerly to a point where a steep, rough and
little traveled trail intersects the Fox-Hamilton
Road; thence easterly on said last mentioned trail
through the timber and over the summit, to the inter-
section of the same with the Round Basin Road, about
one and one-half miles south of W. C. Eddons' place;
thence northerly following the Round Basin Road
through W. C. Eddons' land and along defendant's
"old place" and beyond his homestead.

The distance between Ledgerwood's homestead and
defendant's "old place," over the route described,
is more than ten miles.   It is much farther by any
of the more easily traveled routes.   It was the theory
of the state that the wire in question, or a part of it,
was hauled over the route described.

After Vaughn and Ledgerwood discovered that their
wire had disappeared, they, together with one Lofton,
went to the place where the wire had been piled, and
there they discovered tracks of two sleds, which sled
tracks had been made some time before.   One of these
sled tracks had been made by a large sled having

unshod wooden runners, and the other by a sled having runners shod with iron. They traced these sled tracks along the trail from Ledgerwood's homestead northwesterly to the Cottonwood-Fox Road, where they lost the trail. The rocks in the road had cut shavings from the sled with the wooden runners; some of these shavings were picked up by Vaughn. Vaughn, Lofton and Ledgerwood for some time continued their effort to discover the direction the sleds had taken and their destination after they had entered the Cottonwood-Fox Road, but without success.

A few months later both Vaughn and Ledgerwood examined two sleds that were at Snyder's homestead. They measured the runners on the same, and found that they corresponded with the sled tracks above described; also that the wood, of which the runners upon the unshod sled were made, was of the same kind as the shavings which Vaughn had picked up when attempting to trace the sled tracks.

Defendant and Everett Snyder were on intimate terms, and visits by one, accompanied by his wife, to the home of the other, were frequent. In the summer of 1918, defendant and Snyder grazed about one hundred head of stock together.

About 11 o'clock in the forenoon of the day of February 22, 1918, defendant and his wife were seen passing Eddons' place on horseback, traveling south on the Round Basin Road from the direction of defendant's homestead. On the next day defendant's wife returned alone over the same road. On Sunday morning, February 24, 1918, sled tracks were seen in the road where it passes Eddons' place; the sled appeared to have been drawn by two horses and to have passed Eddons' place twice during the previous night—once when it was heavily loaded, and again

when not loaded. When loaded, it had been drawn in a northerly direction, at which time the runners made deep cuts in the snow, but when the sled had returned, it ran on top of the snow. From footprints made in the snow, it appeared that the sled was accompanied by two men and a dog; as the sled passed Eddons' place, the dog made a detour into Eddons' yard and engaged in play with Eddons' dog, a habit that the dog owned by Everett Snyder had. The sled was a large one and the runners were not shod. The tracks of the sled ended at defendant's old place, having entered the premises.

Three or four days later similar sled tracks were seen upon the above-mentioned trail that connects the Round Basin Road and the Fox-Hamilton Road, near the intersection of the same with the Round Basin Road; when they were made does not appear.

Defendant did not return until Monday, February 25, 1918, when he passed Eddons' place, traveling on horseback towards his home; later on the same day he returned to Eddons' place driving a sled. When he reached there, he had some conversation with Mrs. Ralph Eddon, and then turned around and drove back. The sled defendant was driving on February 25th was not the sled that made the tracks in the road the night before; it had a narrower tread.

The foregoing, in substance, constitutes the evidence relied upon by the state to connect defendant with the commission of the larceny charged in the indictment. Summarized, the evidence consists of testimony:

(1) That two years after the theft, six spools of wire of the same kind as that stolen, were discovered in the possession of the defendant, and in a condition indicating that defendant's possession thereof had been of relatively long duration.

(2) That the defendant was absent from home at the time that the wire is claimed to have been taken; and

(3) That the wire was hauled from Ledgerwood's homestead on a sled, and near the same time sled tracks, made in the night-time, were seen on the road about ten miles distant, leading to defendant's "old place."

No evidence was offered to prove that the wire found in the possession of defendant in March, 1920, was the identical wire, or any part thereof, which was stolen from Ledgerwood and Vaughn in February, 1918, except the testimony of Vaughn that it was the same kind of wire. Neither Ledgerwood nor Vaughn attempted to say that it was the wire of either of them.

2, 3. Where it appears in evidence, upon the trial of one charged with larceny, that the identical property, or some part thereof, alleged to have been stolen was found in the possession of the accused soon after the theft, the case is ordinarily one for the jury: *State* v. *Hale,* 12 Or. 352 (7 Pac. 523); *State* v. *Pomeroy,* 30 Or. 16, 25 (46 Pac. 797); *State* v. *Minnick,* 54 Or. 86, 93 (102 Pac. 605); *State* v. *Brinkley,* 55 Or. 134, 138 (104 Pac. 893, 105 Pac. 708). But to warrant an inference of guilt from the possession of recently stolen property, "it must further appear that the possession was personal, and that it involved a distinct and conscious assertion of possession by the accused": *State* v. *Moss,* 95 Or. 616 (182 Pac. 149).

4. The inference that may be drawn from the fact of finding recently stolen property in the possession of the accused

"is one of fact, and not of law, from which the jury may, in connection with all the attending circum-

stances, determine the guilt or innocence of the accused. It never rises to the dignity of a conclusive presumption of guilt, and is strong or weak according to the character of the property, the nature of the possession, and its proximity in time with the theft.'' *State* v. *Pomeroy,* 30 Or. 16, 25 (46 Pac. 797).

Barbed wire is a cumbersome commodity and does not readily pass from hand to hand; guilt may be inferred from the possession thereof at a time more remote from the theft than in the case of property readily transferred: 25 Cyc. 141.

5. However, before an inference of guilt can be drawn from possession, the property in the possession of the defendant must be clearly identified as that property, or a part thereof, the larceny of which is charged in the indictment: 25 Cyc., p. 132.

In the case of *State* v. *Lackland,* 136 Mo. 26 (137 S. W. 814), Presiding Judge GANNT, speaking for the court, said at page 32 of the opinion:

''The court gave two instructions on the presumption arising from the recent possession of stolen property. This presumption is a most salutary one when the essential facts upon which it rests are shown. It is apparent that the statement of the rule required proof that the identical property or some portion of it was found in the exclusive possession of the accused.''

6. The evidence in this case wholly failed to identify the wire found in defendant's possession as part of that stolen from Ledgerwood or Vaughn. If such proof had been presented in the case, the question of whether defendant's possession of the barbed wire, with the attending circumstances, warranted an inference of defendant's guilt, was one of fact for the jury: 17 R. C. L. 73. Without such proof, the jury in order to return a verdict of guilty was compelled

to base an inference upon an inference, which is not admissible: *State* v. *Hembree,* 54 Or. 463, 476 (103 Pac. 1008).

Galvanized barbed wire is a commodity in common use, and all such barbed wire looks much the same. The proof that was offered in this case as to the identity of the wire, if sufficient to take this case to the jury, would suffice to take to the jury a like charge, involving the same barbed wire, against any other citizen of Grant County who might have galvanized, half-mile wire on his premises.

The state having failed to identify the wire as part of that alleged to have been stolen, no inference of guilt could be drawn from defendant's possession thereof, and the Circuit Court was in error in denying defendant's motion to direct a verdict of acquittal.

The judgment of the Circuit Court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.