Submitted on briefs December 21, 1927, affirmed January 10, rehearing denied February 14, 1928.

## STATE v. BOB MOORE ET AL.

### (262 Pac. 859.)

**Larceny—On Trial for Grand Larceny, State must Prove One Particular Offense.**

1. On trial for grand larceny, state must establish and identify a particular act of theft.

**Criminal Law—At What Stage State must Announce Specific Time of Alleged Larceny Rests Largely in Trial Court's Discretion.**

2. At what particular stage of proceedings state must announce the specific time of the alleged larceny rests largely in the sound discretion of the trial judge.

**Criminal Law—Court's Refusal to Require State at Beginning of Trial to Specify Date of Alleged Larceny Held not Abuse of Discretion.**

3. On grand larceny trial, court's denial of defendant's motion at beginning of trial to require state to specify some particular day as time of the alleged larceny *held* not abuse of discretion, where shortly after trial commenced it became evident that state did not rely on date mentioned in indictment, and defendant did not renew his motion at any time during trial.

**Criminal Law—Matters Preliminary to Felony Trial Constitute No Part of Trial, and are Legal, Even Though Defendant is not Present (Or. L., § 1512).**

4. Preliminary matters constitute no part of felony trial, and are therefore legal, even though defendant is not present, notwithstanding Section 1512, Or. L., providing that defendant, accused of felony, must be present in person at trial.

**Criminal Law—Irregularity in Calling One Juryman to Box Before Defendant, on Trial for Grand Larceny, was in Courtroom, Held Harmless (Or. L., §§ 556, 1512).**

5. Irregularity in calling one juryman to box before defendant, on trial for grand larceny, was in courtroom, *held* harmless, since calling juryman to box was merely a preliminary matter not part of trial, within meaning of Section 1512, Or. L., providing that trial for felony must be had while defendant is present in person, and since Section 556 forbids reversing case on mere technical error.

**Criminal Law—Erroneously Admitting Hearsay Evidence That Automobile was "Presumably Stolen" Held Harmless, in View of Evidence Showing Automobile was Stolen.**

6. On grand larceny trial for stealing an automobile, erroneous admission of hearsay evidence that automobile was "presumably stolen" *held* harmless, where person who made such statement was later called as witness, and without objection was permitted to give testimony showing that he took possession of car and returned it to dealer.

**Criminal Law—Officer's Advice, Following Confession, Suggesting That Chance of Leniency Would be Greater if Defendant, Accused of Larceny, Told Truth, Held not to Make Confession Inadmissible.**

7. Officer's advice, following statements which defendant contended amounted to confession, suggesting that chance of leniency would be better if defendant, accused of grand larceny, "came through clean," *held* not to make alleged confession inadmissible on ground that it had been obtained by improper inducements.

**Criminal Law—Public Officer, to Whom One Accused of Crime Makes Statement, Need not Warn Accused That Statements may be Used Against Him.**

8. It is not necessary for a public officer, to whom a statement is made by one accused of crime, to warn him that his statements may be used against him.

**Criminal Law—Essential Element in Determining Admissibility of Extrajudicial Statements of Accused is That They must have Been Voluntary.**

9. Essential element in determining admissibility of extrajudicial statements of accused is that they must be shown to have been voluntarily made, and not induced by threats, fears, or other improper inducements.

**Criminal Law—On Larceny Trial for Theft of Automobile, Evidence That License Plates, Found on Automobile, were Stolen at About Time Automobile was Stolen, Held Admissible.**

10. On grand larceny trial for theft of automobile, evidence that license plates, found on automobile in possession of defendant and his companion, were stolen at about the time the automobile was stolen, *held* admissible, though showing another crime, since display of stolen tags and operation of stolen car were an inseparable transaction.

**Larceny—Possession of Stolen Automobile Soon After Theft Held to Permit Inference That Possessors Stole It.**

11. Possession of automobile soon after it had been stolen *held* to permit inference that persons in possession were persons who stole it.

---

7. Inducement by exhortation to tell truth as affecting admissibility of confession, see note in Ann. Cas. 1913B, 303. See, also, 1 R. C. L. 554.

8. See 1 R. C. L. 567.

9. See 1 R. C. L. 552.

10. Evidence of other crimes in criminal prosecution, see notes in 105 Am. St. Rep. 976; 62 L. R. A. 194. See, also, 8 R. C. L. 201–204.

11. Effect of possession of stolen property as evidence of larceny, see notes in 70 Am. Dec. 447; 101 Am. St. Rep. 481; 12 L. R. A. (N. S.) 199. See, also, 17 R. C. L. 71, 73.

Larceny—Evidence on Larceny Trial Held Sufficient to Take Case
    to Jury.

12.  Evidence on larceny trial for theft of automobile *held* suffi-
cient to take case to jury, and refusal to direct verdict of not
guilty was proper.

Criminal Law, 16 **C. J.,** p. 529, n. 44, p. 603, n. 81, p. 622, n. 11,
12, p. 717, n. 39, p. 721, n. 88 New, p. 724, n. 22, p. 815, n. 44,
p. 862, n. 42; 17 **C. J.,** p. 368, n. 5.
    Evidence, 23 **C. J.,** p. 36, n. 6.
    Larceny, 36 **C. J.,** p. 873, n. 5, p. 896, n. 1, p. 897, n. 3, p. 920,
n. 56, p. 923, n. 68.

From Klamath: A. L. LEAVITT, Judge.

In Banc.

AFFIRMED.    REHEARING DENIED.

For appellant there was a brief over the name of
*Mr. W. P. Myers.*

For respondent there was a brief over the name of
*Mr. Wm. Duncan,* District Attorney.

ROSSMAN, J.—1–3. The defendant appeals to this
court from a judgment finding him guilty of the crime
of grand larceny; the subject matter of the alleged
theft was an automobile. He contends that the court
erred when it denied a motion made by him at the
beginning of the trial requiring the state to specify
some particular day as the time of the alleged theft.
January 5, 1927, was the time specified in the indict-
ment. Counsel stated, ''We move for the reason that
if the state stands on the fifth day of January, 1927,
the defendant Jim Cushman intends to and can and
will prove an absolute alibi.'' The motion was de-
nied. Defendant and another, Bob Moore, were
jointly indicted; Moore had already been tried. In
his trial counsel for this defendant had become fam-
iliar with the state's evidence and its contentions.

The facts were: The defendant and Moore walked across the street, got into an automobile and were riding in it at the time of their arrest. Shortly after defendant's trial commenced, it became evident that the state did not rely upon January 5th as the time of the alleged theft. It is well settled that the state must prove a particular offense; this is an inherent part of its burden to establish and identify a particular act committed by the defendant and made criminal by the prohibitions of the law; time being an identifying circumstance it becomes necessary frequently to establish it, sometimes to name it beforehand so that the defendant whose defense is an alibi may properly account for his presence on the occasion in question. But at what particular stage of the proceedings the prosecution should be compelled to announce the specific time rests largely in the sound discretion of the trial judge: *State* v. *Keelen,* 103 Or. 172 (203 Pac. 306, 204 Pac. 162); 16 C. J. 862. No abuse of that discretion was shown in this case. It soon became evident that the state contended that the defendant and Moore stole the automobile shortly before the occasion upon which they were riding in it; the defendant renewed his motion at no subsequent time. After the state had rested and before the defendant put on his defensive matter, he did not ask that he be apprised as to the time relied upon by the state. In his defense the defendant admitted he was in the automobile at the time of the arrest, and of course made no effort to show he was elsewhere. It is clear that defendant was in no sense prejudiced by the ruling of the court.

4, 5. The second assignment of error is based upon the fact that one of the jurors was called to the box before the defendant was brought into the courtroom

by the jailer. The record shows that after counsel had announced their readiness to proceed with the trial of the case the following occurred:

"The Court: Very well. Put a jury in the box for the trial of State against Cushman.

" (Reporter's note: One juryman had been called to the box when counsel for defendant interposed as follows:)

"Mr. Meyers: Mr. Cushman is not in the courtroom.

" (Upon the arrival of the defendant the Clerk completed the filling of the jury-box.)

"Mr. Meyers: If the Court please, the defendant waives any examination of the jury as to cause.

"Mr. Duncan: The State will waive any examination."

Further, the record shows that at first counsel for the defendant announced that he would not exercise any peremptory challenge, but when the state expressed its intention to exercise peremptory challenges the defendant apparently availed himself of his similar privilege. The record does not show whether the first venireman, who was called in the absence of the defendant, remained in the box as a juror. Apparently no trouble was encountered in obtaining a satisfactory jury. Section 1512, Or. L., provides: "If the indictment be for a misdemeanor, the trial may be had in the absence of the defendant, if he appear by counsel, but if it be for a felony, he must be present in person." This statute, like the common law, undertakes to assure a defendant charged with a felony that his trial cannot be conducted in his absence. But preliminary and formal matters constitute no part of the trial and are therefore legal even though defendant was not present: 16 C. J. 815. See, also, *State* v. *McDaniel,* 70 Or. 232

(140 Pac. 993). In *Hopt* v. *People of Utah*, 110
U. S. 574 (28 L. Ed. 262, 4 Sup. Ct. Rep. 202), the
federal Supreme Court held that the trial commences
at least from the time when the work of impaneling
the jury begins. But in that case challenges of
jurors were tried in the absence of the defendant;
this the court found may have affected his substantial
rights, for had he been present, the court reasoned,
he might have supplied information which would
have brought a different result. In *State* v. *Spores*,
4 Or. 198, and *State* v. *Halloway*, 57 Or. 167 (110
Pac. 791), we held that it was error to discharge
the jury in the absence of the defendant. In the
former case the jury had agreed upon a verdict of
guilty. In the latter case the jury had disagreed.
In both cases a substantial right of the defendant
was affected; in the former the defendant might have
desired to poll the jury. In the latter the important
function of determining whether the jury should be
kept together longer or discharged took place in the
absence of the defendant. We do not understand
that this defendant contends that any substantial
right of his was invaded during his absence. The
only thing that occurred in the defendant's absence
was a preliminary matter; no issue of fact or of law
had yet arisen. The defendant's presence would have
availed him nothing, but the court very properly
halted the proceedings when its attention was called
to the defendant's absence.

Section 556, Or. L., enjoins us to look for errors
substantially affecting the rights of the appellant,
and prohibits us from disposing of cases on mere
technical errors. While the regularity of the pro-
ceedings was departed from, no substantial right of

the defendant was invaded; hence no reversible error occurred.

6. Assignments of error are based upon the ruling of the court admitting testimony over the defendant's objections. Several items of hearsay evidence got before the jury. We do not believe, however, that any of this evidence was prejudicial; most of it was mere idle talk and the proper evidence was soon supplied. For instance, the witness Walter Foster, as a prelude to his testimony, was permitted to state how he became acquainted with the defendant. In so doing he related a brief conversation he held over the telephone with some official at Grants Pass, to the effect that the latter was holding two men, also an automobile, "presumably stolen." Hearsay evidence is a statement made by one who is not under oath and is not subject to cross-examination. A feeling that a juror may not know how to fairly appraise its value as evidence has led to a total exclusion of all hearsay statements in our scheme of jurisprudence except certain well-defined classifications. The hearsay evidence objected to by defendant's counsel should not have been admitted, but we fail to see how it was prejudicial. This defendant and Moore were the two men concerning whom the Grants Pass official telephoned; the car in which they were riding was the one which was referred to as "presumably stolen." The Grants Pass official was Robert Corpron; he was called as a witness and testified. There was nothing in the conversation repeated by Foster that was prejudicial, except perhaps the words "presumably stolen"; used by themselves, they might have a prejudicial effect, but Foster, without objection, was permitted to testify that he took the possession of the car and sent it to the dealer. He did this,

of course, because he presumed it was a stolen car. We do not believe that the reception of the evidence to which defendant made objection was prejudicial.

7–9. Defendant complains because the court permitted Foster, to whom we have previously referred, to relate as a witness a conversation which he had with the defendant shortly after the latter's arrest; Foster was a state traffic officer. Defendant contends that these statements amounted to a confession and that Foster's narration of them showed that they were obtained by improper inducements. In reply to the defendant's inquiries as to what Foster thought would be meted out to defendant as a penalty, Foster replied: "If a man gets caught in a jam this way the best thing is to come through with a clean breast of it; and if he goes through court proceedings it is pretty hard to ask for leniency, and my advice would be to come through clean." These words did not come from Foster until the defendant had completed the statements which his counsel calls a "confession." Such advice following a confession does not render it inadmissible: *State* v. *Leonard,* 3 Or. 157; *State* v. *Morris,* 83 Or. 429 (163 Pac. 567). It is not necessary for a public officer to whom a statement is made by one accused of a crime to warn the latter that his statements may be used against him. The essential element is that it must be shown that the statement was made free from threats, fears or improper inducements; in fact, it must be a voluntary utterance: *State* v. *Wilder,* 98 Or. 130 (193 Pac. 444); *State* v. *Wong Wen Teung,* 99 Or. 95 (195 Pac. 349). The statement was admissible.

10. Defendant complains because the state was permitted to show that one Paul Johnson, a dealer in automobiles at Klamath Falls, lost a set of dealer's

license plates at about the time when this car was stolen. The license plates, properly attached to the car mentioned in the indictment, were not upon it at the time when defendant was riding in it, but the plates belonging to Johnson had been substituted for them. That Johnson's dealer plates were upon the car was positively testified to by Foster, and was not denied by the defendant. While it was not shown by direct testimony that the defendant or Moore had placed Johnson's license tags upon the car, nevertheless these tags were upon a car which was in the possession of the defendant and his companion. From this circumstance the jury could properly infer that the defendant and his companion were the ones who stole the tags as well as the car. It is true that the indictment did not charge the defendant with the theft of the tags, but for the purposes of this case the tags were in a very real sense a part of the car. The operation of the stolen car and the display of the license tags were an inseparable transaction. The rules of evidence governing the admissibility of testimony showing that the defendant committed other crimes set forth in *State* v. *O'Donnell,* 36 Or. 222 (61 Pac. 892), fully warranted the admission of this evidence.

11, 12. The defendant contends that the court erred when it denied his motion for a directed verdict. As evidence of his guilt, there was his statement to Foster which we have already mentioned, also a statement made by him to the sheriff of Jackson County and one of the latter's deputies that he, this defendant, was the man who got the car. This admission was received without objection. At that time the defendant was somewhat under the influence of liquor, but apparently was able to understand questions and

make answers that were responsive and intelligent. As a witness, he admitted that he walked across the street in the City of Klamath Falls in company with Moore, got into the car and rode off; either the dealer's license tags were already upon the car, or were attached after they got in and before the arrest; Moore was not a dealer in automobiles. Apparently their destination and route was not clear in their own minds, but the defendant stated to Foster that they planned to "ditch the car" and get aboard a train. In addition to this testimony we have the inference which a jury could properly draw from their possession of the car that they were the thieves who stole it. Their possession was a very recent one. This court said in *State* v. *Williams,* 102 Or. 305, (202 Pac. 428):

"Where it appears in evidence, upon the trial of one charged with larceny, that the identical property, or some part thereof, alleged to have been stolen was found in the possession of the accused soon after the theft, the case is ordinarily one for the jury."

To the same effect see *State* v. *Keelen, supra, State* v. *Pomeroy,* 30 Or. 16 (46 Pac. 797), and *State* v. *Hale,* 12 Or. 352 (7 Pac. 523). For a discussion as to the strength and character of this inference, see 36 C. J. 873. In *State* v. *Kehoe* (Mo.), 220 S. W. 961, the circumstances from which the inference of guilt arose were more favorable to the defendant than in the present case, yet the court held that the circumstances warranted an inference that the defendant was the thief. In his motion the defendant dwells much upon the circumstance that while the state claimed that the theft had been committed February 5th, the sales contract was executed February 15th. Nevertheless a certificate of title issued by the Secretary of State

was dated February 1st, and the witnesses testified that the theft took place after the sale and not before, and the return of the car to the garage for repairs was some days after the sale. Mistakes may occur in dates, but the chronological order in which the events transpired most always retain their proper position in the memory. We do not believe that the court would have been warranted in directing a verdict of not guilty.

We have reviewed the other assignments of error; we believe they are without merit. Finding no error in the record the judgment of the lower court is affirmed.   AFFIRMED.   REHEARING DENIED.