Argued September 11, affirmed September 22, 1965

# STATE OF OREGON *v.* MEIDEL

405 P. 2d 844

*George A. Haslett, Jr.,* Portland, argued the cause and filed the brief for appellant.

*George Joseph,* Deputy District Attorney, Portland, argued the cause for respondent. On the brief were George Van Hoomissen, District Attorney, and Garr M. King, Deputy District Attorney, Portland.

Before McAllister, Chief Justice, and Sloan, Denecke, Holman and Lusk, Justices.

HOLMAN, J.

The defendant was convicted of larceny in a warehouse (ORS 164.320) and now appeals. He claims there was not sufficient evidence of his guilt to sustain his conviction because there was no evidence that he was in the warehouse in question.

At about 8:45 in the evening, a special police officer drove up alongside the warehouse and factory of I. Layton Creations, Inc., in the city of Portland for the purpose of checking the front door. At that time an automobile pulled away from the building at a rapid rate of speed in which the officer saw material that appeared to him to be of the type handled by Layton Creations. He overtook the departing vehicle and stopped it. It was loaded with bedspreads and seated in it were the defendant and one Raymond Allen Cook.

The officer inquired concerning their possession of the bedspreads. Defendant told him that he and Cook had been hired by a Mr. Walters, whom they had met at the Starlight Club that afternoon, to help him load and pick up some bedspreads at the loading dock at Layton Creations for the purpose of taking them to

Walters' place of business in the Gateway area on the outskirts of Portland. Neither defendant nor his companion could give the officer the exact address of Mr. Walters' place of business. Defendant said he had not known Mr. Walters prior to meeting him that afternoon at the Starlight Club. Defendant testified at trial he believed the person he knew as Mr. Walters to be the brother of the proprietor of Layton Creations; however, at trial he did not produce any Mr. Walters or the brother of the proprietor.

Some of the bedspreads were identified as being of recent manufacture by Layton Creations and of a type that had not yet been delivered or shipped to customers from their place of business. When found in defendant's automobile they were tied in bundles in a manner and with a type of cord not used by Layton Creations. A quantity of like cord was found in defendant's vehicle.

The police officer testified that over a considerable period of time in which he was employed to check Layton Creations' place of business he had never seen anything left on the loading dock. He had been to the place of business once previously that evening just prior to seven o'clock. There was testimony that upon closing the business that afternoon at 4:30 all doors had been secured and nothing was left on the dock. There was evidence from the proprietor of the business that property was never left outside to be picked up. After the occurrence an inventory was taken and some bedspreads were found to be missing.

A railroad car was parked on a siding alongside the building. Adjacent to it a solid awning extended from the building. Six or eight feet above the awning was an unlocked window into the premises. A ladder

was found next to the window on the inside of the building.

Defendant was identified as having been seen inside the building a few weeks prior to the occurrence. He denied ever having been inside.

■■ At the completion of the state's case defendant moved for an acquittal, which motion was denied. When defendant chose to introduce evidence rather than to stand upon his request for an acquittal, any evidence produced by him which was detrimental to him can be considered by this court in determining whether the evidence was sufficient to sustain the conviction. *State v. Gardner*, 231 Or 193, 372 P2d 783 (1962); *State v. Lamphere*, 233 Or 330, 378 P2d 706 (1963). We believe there was sufficient evidence from which the jury could infer that defendant took the bedspreads from within the warehouse.

In *State v. Williams*, 102 Or 305, 312, 202 P 428 (1921), the court said as follows:

"Where it appears in evidence, upon the trial of one charged with larceny, that the identical property, or some part thereof, alleged to have been stolen was found in the possession of the accused soon after the theft, the case is ordinarily one for the jury: *State v. Hale*, 12 Or. 352 (7 Pac. 523); *State v. Pomeroy*, 30 Or. 16, 25 (46 Pac. 797); *State v. Minnick*, 54 Or. 86, 93 (102 Pac. 605); *State v. Brinkley*, 55 Or. 134, 138 (104 Pac. 893, 105 Pac. 708). But to warrant an inference of guilt from the possession of recently stolen property, 'it must further appear that the possession was personal, and that it involved a distinct and conscious assertion of possession by the accused': *State v. Moss*, 95 Or. 616 (182 Pac. 149)."

■ If the property was shown to have been in a warehouse immediately prior to its theft, it would

follow that the jury could infer that it was taken from there.

■ The defendant also contends that the court erred in denying a motion for a mistrial. The basis for the motion for a mistrial was the following occurrence:

"Mr. Williams: Your Honor, the State would like to call a hostile witness out of order prior to adjournment today with regard to certain admissions of the defendant that have not been—

"Mr. Haslet: Your Honor, I don't want a speech about that, wait just a minute—

"The Court: You want to call this witness and you want him heard outside of the presence of the jury first?

"Mr. Williams: No, I don't care, Your Honor.

"The Court: Well, now let's—

"Mr. Haslett: Well, now wait just a minute—

"The Court: How long will this matter take?

"Mr. Williams: You mean his testimony?

"The Court: Yes.

"Mr. Williams: Well, it depends on the Court's admonition. He said he wouldn't testify at all—"

At the time this occurred the witness had not been put on the stand and had not refused to testify; therefore, he had not been shown to be hostile. He subsequently was called as a witness and proved to be a quite unsatisfactory one for the state. He first testified he had overheard a conversation between defendant and another person in which defendant stated that although people believed the building had been entered through a window, in fact it had been entered with a key and the property put out on the dock from where it was loaded into the car. Upon cross-examination he was not so sure as to what he had overheard. In chambers he admitted to the judge he had told the

district attorney he could be subpoenaed but that he could not be made to talk.

The statements of the district attorney, as set forth above, were improper. ORS 45.590 and 45.610 provide for the proper procedure for impeaching a party's own witness. However, the trial court found that the statements of the district attorney, while improper, were not sufficiently prejudicial to merit the granting of a new trial. We believe the trial court did not abuse its discretion in so finding, and that the statements made by the district attorney were not prejudicial error.

The judgment of conviction is affirmed.