Argued April 22; affirmed October 20, 1931; rehearing denied
January 12, 1932

# STATE *v.* EPPERS

(3 P. (2d) 989, 6 P. (2d) 1086)

*B. A. Kliks,* of McMinnville (Alvin Kurtz, of McMinnville, on the brief), for appellant.

*Earl A. Nott,* District Attorney, of McMinnville, for the State.

BROWN, J. The first objection disclosed by the bill of exceptions relates to the following testimony given by the owner of the cow:

"Q. What was done with the cow? A. Well, the cow was left on the ranch.

"Q. State whether or not you got any settlement for her. A. I did.

"Mr. Kliks: Just a minute. That is irrelevant and immaterial.

"The Court: Objection will be overruled.

"A. I got a settlement for her.

"Q. From whom? A. From Mr. Brown."

██ This was a collateral inquiry and had no place here, and the ruling was error. However, the matter of

the settlement between Brown, the purchaser of the alleged stolen cow, and Chodrick, the owner thereof, was fully developed and is explained in detail in the evidence adduced by the defendant. See Defendant's Exhibits 13 and 14. Hence this assignment is without merit.

At page 3 of the bill of exceptions, we find that the district attorney, in his opening statement, said that he expected to prove that the defendant had been engaged in the business of trading and buying cattle and horses, and was traveling over the country with a truck which he used in that line of business. This statement is justified by the record.

The defendant objected to the testimony of Sheriff Manning of Yamhill county, who testified that he had been acquainted with the defendant for four or five years, that the defendant was a stock dealer, and usually traveled in trucks. He further testified that he arrested the defendant in Brighton, Colorado. All of this testimony was competent.

Exception 3-A relates to the testimony of Donald Chodrick, son of the owner of the cow, and the person who had handled and fed the cow when a calf, and had marked her. He testified that the cow found in the Brown pasture was his father's cow.

Exception 4 involves the ruling of the court on motion for a directed verdict of acquittal of the defendant. As grounds for the motion, the defendant states:

"The proof is that Mr. Chodrick had possession of a certain cow with a 'crop' off of each ear, aged approximately between three and four years, age not certain, which cow disappeared 'in the latter part of October,' 1928, by Mr. Chodrick turning the cow out on the range so that the cow might range at will from the farm of Chodrick seven miles west of Yamhill, and

that the cow could stray to Tillamook or Washington county; that such cow was not missed until 'along in November'; that Chodrick represented that the cow was lost to Mr. McQueen, deputy sheriff of Yamhill county, Oregon; that the cow was found near Terrebonne, in Eastern Oregon, on a ranch belonging to James Brown; that James Brown testified that he purchased the cow from the defendant; that the cow was worth $100.00; that there was no evidence of how the cow reached Eastern Oregon from the Chodrick farm, or from where she was turned out on the open range. Chodrick, his son, and the deputy sheriff claimed the cow on the Brown farm was the same cow that Chodrick had in Yamhill county, Oregon."

In the motion, which embraces 15 paragraphs, it is stated, in part:

"(1) That there is no connection with the defendant of the alleged taking of the cow from Yamhill county.

\* \* \* \* \*

"(4) That there was no proof of any taking of the cow by any one.

"(5) That there was no showing of the stealing of the cow, or of committing larceny.

"(6) That the *corpus delicti* was not proven.

\* \* \* \* \*

"(9) That at best there might be a suspicion of the defendant having in his possession stolen goods, but nothing further.

"(10) That the State must show that the cow was stolen in Yamhill County, Oregon, and that it failed to show this.

\* \* \* \* \*

"(15) That there is no evidence of any larceny; that there was no showing that the cow was held under suspicious circumstances, or any attempt to cover up the possession by Eppers; that it is not a matter of recent possession by Eppers, that, generally, the *corpus delicti* was not proven by the State."

 After a denial of the motion to acquit the defendant, the prosecution moved to reopen the case in order that the State might adduce additional evidence of venue of the case. The defendant's objection was overruled by the court. Under the circumstances disclosed by the record, it was not error for the court to reopen the case for the purpose stated. The discretion vested in the court by law was not abused. Furthermore, it is the judgment of the writer that there was before the jury sufficient evidence of the venue of the alleged crime to submit the case. The court judicially knew the boundaries of Yamhill county. It judicially knew the distance of the boundary of that county from the town of Yamhill. The testimony showed that the cow in question ranged in and about the farm of the owner, which was located about seven miles west of the town of Yamhill.

Circumstantial evidence is sufficient to establish venue: Underhill's Criminal Evidence (3d Ed.), § 467.

An Oregon case where the question of venue was at issue is *State v. Casey,* 108 Or. 386 (213 P. 771, 217 P. 632). In that cause, which was a case of homicide, a question was raised as to the venue of the offense, which was committed at a place known as Mock's Bottom. According to the record, there were existing circumstances, and places named in the testimony, from which the jury could infer that Mock's Bottom was in Multnomah county, Oregon. In deciding the case, we said:

"The court judicially knows the boundaries of Multnomah County. It has been established by a public law. * * *

"For the purpose of determining venue, courts will take judicial notice of well-known geographical features, the division of states into counties, cities and

towns, and the boundary lines of such counties, cities and towns within the state, when fixed by public law. 13 Ency. of Ev., 930; Sec. 729, Or. L.''

See, also, Oregon Code 1930, § 13-306, relating to venue of crimes when committed on or near county boundary.

In his motion the defendant asserts time and again that the possession of stolen goods would be insufficient to convict any person of the crime of larceny. If the defendant means to say that the possession of stolen goods alone is insufficient to convict one of the crime of larceny of such goods, we agree.

With relation to the presumption arising from the possession of stolen goods, Wharton, in his work on Criminal Evidence (9th Ed.), at section 758, says:

''When we take up the presumption arising from the possession of stolen goods, we have again to deplore the looseness of phraesology which assigns one term, 'presumption,' to processes so very different as fictions, presumptions of law, and inferences. * * * Taking up, then, the point immediately before us, we may say that a court may properly tell the jury that the possession by a party of stolen goods is a fact from which his complicity in the larceny may be inferred. But the possession must be personal; must be recent; must be unexplained; and must involve a distinct and conscious assertion of property by the defendant. If the explanation involves a falsely disputed identity or other fabricated evidence, the inference increases in strength.''

We note, also, the early case of *State v. Hale,* 12 Or. 352 (7 P. 523), where Mr. Justice LORD, in delivering the opinion for the court, said concerning such presumption:

''The question is undoubtedly a vexatious one, and upon it, as Mr. Bishop says, 'all sorts of utterances are

to be found in the books.' 2 Bishop's Crim. Proc., § 740. But we regard it as a question of fact and not of law, to be submitted to the jury.''

To like effect, see *State v. Pomeroy,* 30 Or. 16 (46 P. 797) ; *State v. Minnick,* 54 Or. 86 (102 P. 605) ; *State v. Brinkley,* 55 Or. 134 (104 P. 893, 105 P. 708).

In *State v. Williams,* 102 Or. 305 (202 P. 428), this question was again at issue. In that case it was held:

''The inference that may be drawn from the fact of finding recently stolen property in the possession of the accused 'is one of fact, and not of law, from which the jury may, in connection with all the attending circumstances, determine the guilt or innocence of the accused. It never rises to the dignity of a conclusive presumption of guilt, and is strong or weak according to the character of the property, the nature of the possession, and its proximity in time with the theft.' *State v. Pomeroy,* 30 Or. 16, 25, 46 P. 797.''

See, also, *State v. Keelen,* 103 Or. 172 (203 P. 306, 204 P. 162).

In 36 C. J., § 427, pp. 867, et seq., there appears the following valuable discussion on the subject:

''Subject to the limitations hereinafter considered, the rule may be stated broadly that proof of the possession by accused of the property described in the indictment recently after the larceny raises the presumption that he was the thief. The rule itself indicates the condition under which it operates, that is, to raise the presumption of guilt there must be proof: (1) That the property described in the indictment was stolen, the mere fact of finding one man's property in another man's possession raising no presumption that the latter stole it. (2) That the property shown to have been possessed by accused was the stolen property. (3) That the possession was recently after the larceny. The limitations are that accused's possession must be

proved to have been personal, conscious, and exclusive, and unexplained by any direct or circumstantial evidence which would rebut the presumption of a taking by accused * * *."

Section 428 of the same work deals with recent possession, and section 429 lays down the rule as to what constitutes exclusive personal possession. Section 432 relates to the nature of the presumption, and declares that the possession of stolen property is only a fact or circumstance from which guilt may be inferred as a matter of fact. Section 433 treats of the strength of the presumption, and section 434 of the explanation of possession.

Based upon the testimony of the prosecution in this case, the jury had a right to infer that the cow alleged to have been stolen and shown to have disappeared from the place of the owner in Moore's valley was unlawfully taken therefrom without the knowledge or consent of the owner. Likewise, the fact that the Eastern Oregon ranch where the cow was found is situate 240 miles distant from her home range clearly indicates that some person had transported her from the one place to the other. The State offered testimony tending to show that following the theft the cow was found in possession of this defendant; that the possession was recent; that it was personal; that it was exclusive; and that it was unexplained. It is shown by the record that, when search was made for the defendant, he disappeared from the state, but was finally apprehended in Colorado, where he was living under an assumed name. When interrogated concerning the cow in question, he stated that he had possessed and sold to James Brown a Holstein cow that he had bought from one H. C. Grater, and he disclaimed all knowledge of the alleged stolen cow.

▮ Evidence of flight of one charged with crime is admissible against him, "whether the case is one of positive or of circumstantial evidence": Larceny and Kindred Offenses, Rapalje, § 198.

▮ Where there is some competent evidence that fairly tends to establish each material allegation of the indictment, it is the duty of the court to submit the case to the jury: *State v. Pomeroy,* supra, citing *State v. Jones,* 18 Or. 256 (22 P. 840).

▮ We now reach the question of the proof of the *corpus delicti* of the offense. The term "corpus delicti" is made up of two elements: It must be shown, first, that a certain result has been produced, as, for example, in the case at bar, that a cow has been stolen; second, that some one is criminally responsible for the result. Primarily, the "corpus delicti" means "the body of the offense": *State v. Weston,* 102 Or. 102 (201 P. 1083). In view of the circumstances testified to by the owner of the cow and his son, the jury had a right to believe that the cow in question disappeared from Moore's valley with the assistance of some person. The circumstances adduced by the State, if believed by the jury to be true, fairly tend to show that the cow had not only disappeared from her usual habitat but that her disappearance was due to the criminal agency of some one. Later, that criminal agency was shown to have been exercised by this defendant. So, if the testimony of the prosecution was found by the jury to be the truth, the *corpus delicti* was established, and it follows that the court did not err in denying the defendant's motion to direct a verdict. In addition to the authorities hereinbefore cited, see *State v. Hill,* 63 Or. 451, 459 (128 P. 444); *State v. Moore,* 124 Or. 61 (262 P. 859).

A motion for a directed verdict is a demurrer to the sufficiency of the evidence. As to when a criminal case will be submitted to the jury, we have previously referred to *State v. Pomeroy,* supra, and *State v. Jones,* supra. To the effect that such a motion admits the truthfulness of the testimony, see, also, *Farrin v. State Industrial Accident Commission,* 104 Or. 452 (205 P. 984).

The appellant has reserved exception upon exception to the instructions given by the trial court. Considered by fragments, such instructions might be subject to criticism. Sometimes too many instructions are given, and the jury is thereby confused. Among the many authorities supporting this proposition, we note the following observation by Hughes, Instruction to Juries, where the author says, at section 19:

"The giving of many instructions upon every conceivable phase of the law is a pernicious practice, and tends to confuse rather than to enlighten the jury upon the issues. The issues in a case being very simple, there should be only a few brief instructions. The giving of many on either side in such case naturally leads to confusion. When instructions are numerous or prolix they are more apt to mislead the jury, unless prepared with great care, than when they are few in number and simple in structure.

"Where the instructions requested are too numerous or voluminous, the court may refuse them and charge the jury on its own motion."

But, when the instructions given in this case are read in their entirety, it seems to the writer that the trial judge endeavored to make a clear, concise, and fair statement of the law applicable to the evidence of record, and that he succeeded in that endeavor.

■ The appellant criticizes the court's instruction in the matter of the defendant's defense of an alibi. In this connection, the court told the jury: ·

"In this case the defendant has also introduced as a defense what is known at law as an alibi; that is to say, the defendant claims that he was not at the place where the crime was committed, but was elsewhere. The defendant also claims that he was in an entirely different county at the time that the crime was committed. I charge you that this defense of an alibi is a proper defense. Now, it is not necessary that the defense of an alibi shall be proven by the defendant by a preponderance of the evidence to entitle this defendant to a verdict of not guilty, but it is sufficient if the evidence offered by the defendant in this respect leaves a reasonable doubt in your minds as to his guilt of the crime charged. If this defense of an alibi therefore leaves in your minds a reasonable doubt as to the guilt of the defendant, then and in that event it is your duty to bring in a verdict of not guilty."

■ The real question in this case rests upon the identity of the alleged stolen property. Chodrick and his son identified the Holstein cow on the Brown premises in Eastern Oregon as the cow of H. W. Chodrick of Moore's valley, Yamhill county. Upon the other hand, the defendant asserts that that cow was purchased by him from one H. C. Grater, and that three days after the purchase thereof he delivered her to Brown, where she was later found by the deputy sheriff and viewed by Chodrick and his son. On this point, the court thus instructed the jury:

"I further instruct you that if you believe from all the evidence that the defendant bought the cow from one H. C. Grater, that the defendant received such cow from Grater in a deal, and that it was in good faith, then it would be your duty to acquit this defendant.

"I instruct you that even if you found that the cow of Mr. Chodrick was stolen, it is further necessary for the State to prove to you beyond a reasonable doubt that it was the defendant who stole it, in Yamhill county, Oregon.

"I instruct you that it is for you to determine whether or not the cow which the defendant Eppers is alleged to have had in Eastern Oregon and sold to the witness Brown, if you find that to be a fact, is the same cow as the cow of H. W. Chodrick. If you find that it was the cow of Mr. Chodrick that the defendant Eppers had in Eastern Oregon, then your next consideration would be as to the source from which the defendant obtained the cow. If you find that the defendant Eppers obtained the cow from Mr. Grater, in an innocent transaction, and if you find that the defendant obtained the cow from H. C. Grater and delivered it to Mr. Brown, * * * then that would be an explanation of the possession of the alleged cow claimed to have been owned by Mr. Chodrick, and you would be required to return a verdict for the defendant."

■ Based upon the affidavit of the defendant, counsel for defendant moved the court for a new trial. We have read this motion with much care. Much of the testimony that the persons named in the affidavit would give is in its nature impeaching, while other portions would corroborate the testimony of the defendant. In the case of *Territory v. Latshaw,* 1 Or. 146, it was held that "newly discovered evidence to impeach a witness upon a former trial is not ground for a new trial."

■ Counsel for defendant made a strong showing tending to exculpate the defendant. The testimony of H. C. Grater, Harold Grater, and George Crockett was to the effect that the cow in question was a cow that the defendant had purchased from H. C. Grater a few

days before its delivery to Brown, while, as we have seen, the State rested its case upon the identification of the cow by Chodrick and his son. The question as to the weight of the testimony was for the determination of the jury.

Article 7, section 3-c, Oregon Constitution, reads:

"No fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affimatively say there is no evidence to support the verdict."

We have carefully considered the various objections, and find no valid reason for reversing this cause. We, therefore, direct its affirmance.

BELT and CAMPBELL, JJ., concur.

BEAN, C. J., absent.

---

Petition for rehearing denied January 12, 1932.

ON PETITION FOR REHEARING
(6 P. (2d) 1086)

*Walter B. Gleason,* of Portland, for appellant.

*Earl A. Nott,* District Attorney, of McMinnville, for the State.

BROWN, J. The defendant has filed a petition for a rehearing, wherein he states:

"That an inspection and review of the testimony of the witnesses for the state * * * upon which

the defendant and appellant's motion for a directed verdict * * * was based will disclose that there is a total and utter lack of positive testimony, or of other evidence, of the value of the cow alleged to have been stolen, and, therefore, there was no evidence as to that element of the alleged crime upon which the jury could pass upon, or upon which to support the verdict."

By the indictment the defendant was charged with larceny as defined by Oregon Code 1930, at section 14-319, which reads:

"If any person shall commit the crime of larceny by stealing any horse, gelding, mare, mule, ass, jenny, or foal, bull, steer, cow, heifer, calf, hog, dog, or sheep, such person, upon conviction thereof, shall be punished by imprisonment," etc.

█ Although the indictment did allege the value of the animal stolen, no allegation of value, age, color, or stock was necessary. Section 13-711, Oregon Code 1930, provides:

"When a crime involves the taking of or injury to an animal, the indictment is sufficiently certain in that respect if it describe the animal by the common name of its class."

The question of value was before our court in the recent case of *State v. Broom,* 135 Or. 641 (297 P. 340). In that case the defendant was indicted for robbery, but was convicted of the crime of larceny from the person. In the indictment no value was placed upon the revolver that was alleged to have been feloniously and with violence taken from the person of the deputy sheriff, and, with reference to that phase of the case, we wrote:

"An instrument of no value is not subject-matter for prosecution for the crime of larceny. 2 Wharton's Criminal Law (11th Ed.), § 1119. It will be noted that

the definitions of 'larceny' always embrace ownership and value, and very often use the term as 'the property of' the victim; 'the property of' designating both ownership and a thing of some value.

"In the case at bar no witness testified directly as to the value of the pistol claimed to have been stolen from the person of Lucas. However, both courts and textwriters hold that the value of the article forming the subject-matter of the larcenous act may be shown inferentially. See 2 Wharton's Criminal Law (11th Ed.), § 1117. In the crime of larceny from the person, 'the value of the property is immaterial, so that it have some value. There is no occasion, as there is in larceny, for alleging the value, as the punishment is not made to depend on the value of the property taken.' 1 McClain on Criminal Law, § 472. To the same effect is Underhill's Criminal Evidence (3d Ed.), § 467.''

See, also, the authorities cited in the succeeding paragraph.

To the effect that where a crime involves the larceny of an animal, the indictment is sufficiently certain if it describes the animal by the common name of its class, see *State v. Brinkley,* 55 Or. 134 (104 P. 893, 105 P. 708). We note also the case of *State v. Wright,* 122 Or. 377 (257 P. 699, 259 P. 298), where this court held that an indictment for larceny which avers that the value of the cow stolen exceeded $35 neither raises nor reduces the offense. See Joyce on Indictments (2d Ed.), § 426. As to the sufficiency of an indictment in cases of this character, we also direct attention to the following concise statement which appears in 3 Bishop's New Criminal Procedure, § 713, par. 4:

"In statutory horse-stealings and other like larcenies of specific things, where the punishment in no degree depends on the value, it need not be averred; or, if averred, it need not be proved.''

■ However, in the case at bar, the value of the stolen cow was averred, and there was an abundance of testimony before the jury from which it could rightfully find that the cow was of value. In the course of the trial the defendant filed a motion for a directed verdict, in which he states "that James Brown testified that he purchased the cow from the defendant; that the cow was worth $100." Other witnesses likewise testified to the value of the cow.

After a fair and impartial trial in the lower court, the defendant was convicted. The petition for a rehearing will be denied.

BEAN, C. J., BELT and CAMPBELL, JJ., concur.