Argued January 20, affirmed February 10, reconsideration
denied March 19, petition for review denied April 15, 1975

# STATE OF OREGON, *Respondent, v.* LESLIE EUGENE SAGE (No. 16-827), *Appellant.*

531 P2d 707

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for appellant.

*Janet A. Metcalf,* Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

## THORNTON, J.

Defendant was convicted after a jury trial of murdering Theodore Bochanyin in Tillamook while defendant and a confederate were committing or attempting to commit a burglary of the victim's restaurant. ORS 163.115(1)(c).[1]

---

[1] ORS 163.115(1)(c) provides:

"(1) Except as provided in ORS 163.125, criminal homicide constitutes murder when:

"* * * * *

"(c) It is committed by a person, acting either alone or with one or more persons, who commits or attempts to commit arson in the first degree, burglary in the first degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree or sodomy in the

The sole issue involved in this appeal is whether the trial judge erred in allowing the state to reopen its case after having rested and after defendant had taken the stand and testified, in order to secure a redetermination by the court if certain incriminating statements made by defendant were voluntary and could be used for purposes of impeachment.

The murder occurred in the early hours of June 19, 1973. Later the same day defendant was apprehended. After he had been duly advised of his rights defendant told the police that he and a confederate got drunk and broke into the restaurant looking for money and various things; that the victim arrived around 5 a.m. and defendant and his confederate hid in a back room; that when the victim came into the back room they jumped and stabbed him. Defendant admitted stabbing the deceased a number of times. The men then left through a window located on the west side of the building and went to the confederate's Tillamook apartment. They divided $34 at the latter's apartment and defendant left, hitchhiking to Lee's Camp, which is located on the Wilson River highway some 25 miles east of Tillamook; that defendant took his bloody clothes and placed them in a duffel bag underneath the bridge across the Wilson River at the camp.

Prior to trial defendant's counsel moved to suppress as involuntary "any written or oral confession or statement which may have been made by Defend-

---

first degree and in the course of and in furtherance of the crime he is committing or attempting to commit, or the immediate flight therefrom, he, or another participant if there be any, causes the death of a person other than one of the participants."

ant." Three weeks before trial the court held an *in camera* hearing. At that hearing the state introduced a tape recording of defendant's confession given on June 19, 1973. The state also introduced evidence as to other incriminating statements made by defendant to Tillamook Police Chief Callister on June 20 and 25, 1973. This testimony was that Chief Callister talked to defendant on those dates; that the officer gave defendant the *Miranda* advice;[2] that the defendant understood the warnings; and that the defendant wished to talk to Chief Callister. However, the district attorney did not inquire as to the content of the conversations, their length or the circumstances of the interrogations.

At the conclusion of the hearing the court held that the defendant's statements were voluntary and denied defendant's motion to suppress them.

At the trial, during the presentation of the state's case, Chief Callister took the stand. The June 19 taped confession was played for the jury. However, when Chief Callister mentioned the June 20 conversation the defendant objected. After extended discussion in chambers, the court ruled that "* * * it's difficult, if not probably impossible, for a court * * * to decide whether a statement was voluntarily made unless it hears the statement in its entirety. On that ground, I'm going to rule that these things [the June 20 and 25 statements] are inadmissible * * *." After putting the remainder of its case in evidence the state rested. The defendant put forward the defense of insanity.

When he took the stand in his own defense, he admitted his involvement in the homicide but asserted

---

[2] Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

that at the time of the killing he was legally insane. The state then sought to impeach the defendant through the use of prior inconsistent statements made by defendant to Chief Callister on June 20 and 25. Defense counsel objected.

The trial court, then, in an *in camera* hearing, allowed the state to reopen the question of the voluntariness of the June 20 and 25 statements. After Chief Callister testified as to the content and circumstances of the two conversations, the court held that the defendant's statements were voluntary and could be used to impeach the defendant.

The main thrust of the Public Defender's argument for reversal of defendant's conviction is this: Where, as here, the court had already ruled that the statements made by defendant to the police were involuntary and therefore inadmissible, and defendant thereafter took the stand in reliance on this ruling, the state should be estopped from requesting the court to reopen, reexamine and redetermine the issue of the voluntariness of those same statements; and that the action of the court in redetermining this issue and allowing these statements to be used for impeachment constituted an abuse of discretion.

The state contends that the action of the trial court was authorized by ORS 17.215,[3] and well within the bounds of the court's discretion. For the reasons which follow we conclude that the trial court did not err.

■ Under ORS 17.215 the trial court has the discretionary authority in a criminal case to allow under

---

[3] ORS 17.215 provides:

"The order of proof shall be regulated by the sound discretion of the court. Ordinarily, the party beginning the case shall exhaust his evidence before the other begins."

appropriate circumstances a party to reopen his case. *State v. Eppers,* 138 Or 340, 3 P2d 989, 6 P2d 1086 (1932); *State v. Brawley,* 4 Or App 229, 476 P2d 942 (1970), Sup Ct *review denied* (1971).

In *State v. Cole,* 252 Or 146, 159, 448 P2d 523 (1968), the court said:

> "The order of proof and leave to reopen is within the sound discretion of the trial court and will not be disturbed on appeal except for abuse. * * *"

■ We are satisfied that the action of the trial judge, in allowing the state to reopen in order to secure a redetermination by the court of the voluntariness of the challenged statements and their admissibility for impeachment purposes under the facts involved here, was not an abuse of discretion. Defendant does not contend that he was denied a full and fair opportunity to rebut the new evidence.

■ In view of the trial court's subsequent redetermination that the challenged statements were voluntary, defendant's reliance upon the rule of inadmissibility announced by our Supreme Court in *State v. Goodwin,* 207 Or 642, 298 P2d 1024 (1956), and *State v. Brewton,* 247 Or 241, 245, 422 P2d 581, *cert denied* 387 US 943 (1967), and followed by this court in *State v. Haas,* 13 Or App 368, 510 P2d 852, *aff'd* 267 Or 489, 517 P2d 671 (1973), *cert allowed* (October 15, 1974), is misplaced. This rule has no application here. *Cf., Harris v. New York,* 401 US 222, 91 S Ct 643, 28 L Ed 2d 1 (1971).

■ As to defendant's argument that the state should be estopped to reopen, a defendant in a criminal proceeding has no vested right in any neglect or omission of the prosecuting attorney. *State v. Klein,* 195

Wash 338, 80 P2d 825 (1938). Courts in other jurisdictions have taken the same view in similar situations. *See, Rayburn v. State,* 188 So2d 374 (Fla App 1966); *State v. Cota,* 99 Ariz 237, 408 P2d 27, *cert denied* 383 US 929, 86 S Ct 937, 15 L Ed 2d 848 (1965); *People v. Richardson,* 192 Cal App2d 166, 13 Cal Rptr 321 (1961); *State v. Caro,* 55 NM 176, 228 P2d 957 (1951).

Affirmed.