Argued and submitted May 28, affirmed November 12, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ISAAC CREED AGEE,
*Defendant-Appellant.*

Marion County Circuit Court
04C-52786, 05C-40967;
A128672 (Control), A128673

196 P3d 1060

David Ferry, Deputy Public Defender, argued the cause for appellant. With him on the briefs were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services. Isaac Creed Agee filed a supplemental brief *pro se.*

David B. Thompson, Senior Assistant Attorney General, argued the cause for respondent. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

SCHUMAN, J.

.

**SCHUMAN, J.**

Defendant, high on methamphetamine, stole a pickup truck from a gas station and then intentionally drove it into an unsuspecting stranger who was taking his morning walk. While the victim was still pinned beneath the truck, defendant continued to drive it into nearby bushes before stopping. Defendant then got out and beat the victim with his fists, kicked him, and threw a tool at him. He was arrested at the scene and incarcerated. While in jail, he defecated and urinated into a cup and threw the mixture on three corrections officers. In a trial consolidating the charges related to the pickup incident with the charges related to the corrections officers, defendant was convicted of multiple offenses. He appeals from his convictions involving his assaults of the corrections officers, arguing that the trial court abused its discretion in allowing the state to reopen its case after defendant moved for a judgment of acquittal. Regarding the pickup incident and the assault, he advances several assignments of error challenging the sentences he received. We affirm.

Defendant's first four assignments of error concern his three convictions for third-degree assault on the corrections officers. He was indicted under ORS 163.165(1)(i), which provides,

"A person commits the crime of assault in the third degree if the person:

"* * * * *

"(i) Knowing the other person is a staff member, intentionally or knowingly propels any dangerous substance at the staff member while the staff member is acting in the course of official duty * * *."

A "staff member" includes a "corrections officer," ORS 163.165(3)(b)(A), defined as "an officer or member of a law enforcement unit who is employed *full-time*" supervising prisoners, ORS 181.610(5) (emphasis added). At the close of the state's case, defendant moved for a judgment of acquittal on those charges on the ground that the state had failed to establish an essential element of the offense, *i.e.*, that each of the officers at whom he had propelled his feces and urine was

employed full time by the jail. The state did not respond, and the judge denied defendant's motion without comment or explanation. Thereafter, defendant put on no evidence. The parties made their closing arguments, and the judge retired to deliberate.

When the court reconvened the proceeding, but before it announced the verdict, the state moved to reopen its case to present evidence that the officers were, in fact, full-time employees. The following colloquy ensued:

"[DEFENSE COUNSEL]: * * * At this point, I would object to the state's reopening of the case. The testimony presented was an issue that I raised at the motion for judgment of acquittal. It was argued at that point. The state, after the motion for judgment of acquittal, had the opportunity to request the Court to reopen its case. It did not. We had closing arguments. At the conclusion of closing arguments, there was a discussion between counsel and I with regard[ ] to the statutes. At that point, I showed counsel the statute. Specifically ORS 181.610, which contained the definition of corrections officer, the requirement for full-time employment. And it is not until now, after the Court has been out deliberating, that the state has moved to reopen its case. So we would object, Your Honor.

"[THE COURT]: Well, I understand it's certainly a bit unusual. Had I rendered my decision, I think that at that point it would [have] come too late, but the motion is made prior to my rendering my decision. Exercising my discretion, I will allow [the state] to reopen for that limited purpose[.]"

The state then recalled one of the corrections officers and elicited testimony that all three officers were "full-time employees of the Marion County Sheriff's Office at the Marion County Jail." The court "agree[d] that there may have been an element missing before the case was reopened," but after hearing the additional evidence, found defendant guilty of three counts of third-degree assault.

On appeal, defendant raises three assignments of error relating to the trial court's denial of his motion for judgment of acquittal based on the insufficiency of the evidence on each of his three charges for third-degree assault. He also assigns error to the court's grant of the state's motion to

reopen the case. The parties agree that the evidence presented before the motion to reopen was not sufficient to support the convictions. They also agree that the uncontradicted evidence presented after the motion was granted, if properly admitted, rectified the insufficiency. The assignments, therefore, all resolve to a single issue: whether the court erred in granting the motion to reopen.

Defendant bases his argument on ORS 136.445, which provides:

> "In any criminal action the defendant may, after close of the state's evidence or of all the evidence, move the court for a judgment of acquittal. The court *shall* grant the motion if the evidence introduced *theretofore* is such as would not support a verdict against the defendant. The acquittal shall be a bar to another prosecution for the same offense."

(Emphasis added.) According to defendant, the statute by its plain and unambiguous terms requires the court to consider only the evidence that has been presented at the time that the motion for judgment of acquittal is made. Thus, defendant argues, the court abused its discretion by allowing the state to reopen its case to present additional evidence, because doing so was not among the court's lawful options. *See State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000) (court has no discretion to choose unlawful option).

The Supreme Court, however, has recognized that trial courts have discretionary authority in criminal cases to allow, under appropriate circumstances, the state to reopen its case after the defendant has moved for a judgment of acquittal. The most direct statement of that authority occurred before the enactment of ORS 136.445. In *State v. Eppers*, 138 Or 340, 346, 3 P2d 989 (1931), *on reh'g*, 6 P2d 1086 (1932), the court held that when, after denying the defendant's motion for a judgment of acquittal, the court allowed the prosecution to reopen its case in order to adduce necessary but theretofore unadduced evidence of venue, "it was not error for the court to reopen the case for the purpose stated. The discretion vested in the court by law was not abused." After enactment of ORS 136.445, the court confirmed the continuing vitality of *Eppers* in *State v. Cervantes*, 319 Or 121, 873 P2d 316 (1994), albeit in *dictum*. In that case,

the state moved to reopen its case, in order (as in *Eppers*) to prove venue. The court concluded that additional evidence was not necessary, because venue was adequately established by circumstantial evidence. *Id.* at 124. In a footnote, the court stated:

> "Because the trial court concluded that there was sufficient evidence for the jury to find venue, the court did not expressly rule on the state's motion [to reopen]. The trial court had discretion to grant the state's motion to reopen its case and allow it to prove venue by ordinary evidentiary means. *See State v. Eppers*[.]"

*Id.* at 124-25 n 3.

It might appear that *Eppers* and *Cervantes* cannot be squared with the plain meaning of ORS 136.445. On closer analysis, however, the cases and the statute do not clash. ORS 136.445 literally precludes the court from considering evidence adduced "after close of the state's evidence or of all the evidence." It does not address, directly or indirectly, the court's authority to reopen a case in order to present additional evidence. That authority is well established. *See, e.g., Jett v. Ford Motor Company*, 192 Or App 113, 124, 84 P3d 219, *rev den*, 337 Or 160 (2004) ("We review rulings on motions to reopen a case in order to present additional evidence for abuse of discretion."); *Angus v. Joseph*, 60 Or App 546, 551, 655 P2d 208 (1982), *rev den*, 294 Or 569, *cert den*, 464 US 830 (1983) ("It is well established that the reopening of a case at any time for the introduction of additional evidence rests in the sound discretion of the trial court.") (internal quotation marks omitted); *State v. Sage*, 20 Or App 368, 372-73, 531 P2d 707 (1975) ("[T]he trial court has the discretionary authority in a criminal case to allow under appropriate circumstances a party to reopen his case."). If a court lawfully exercises its discretion to reopen a case and the state subsequently presents additional evidence, then the first occasion on which the state announced that it rested was not, in that event, the "close of the state's evidence." That is what reopening means; what was once closed is closed no longer. Thus, in the present case, the evidence of the corrections officers' full-time employment occurred before the final and operative "close of the state's evidence."

■ The only question remaining, then, is whether the court's decision to allow the state's motion to reopen its case was an abuse of discretion. We conclude that it was not. The reopening did not deprive defendant of a fair trial by preventing him from adducing any relevant evidence on his own behalf. It did not raise an issue to which, with more time, defendant might have been able to respond. It is true that the Supreme Court has noted, "We know of no case in which it has been held proper to reopen the case and receive new evidence after the jury has commenced its deliberations, and we do not commend the practice." *Creasey v. Hogan*, 292 Or 154, 169, 637 P2d 114 (1981). This bench trial, however, presents a different situation. In a jury trial, the court would have to interrupt the jury's deliberations and allow presentation of new evidence; that sequence of events could unduly highlight the new evidence and amount, in essence, to a comment on its importance. That distortion does not occur in a bench trial. In fact, defendant cites no case in which a decision allowing a motion to reopen was held to be reversible error, and we find no abuse of discretion here. The court's decision to reopen, albeit at a late stage of the proceeding, did not "exceed[ ] the bounds of reason," *Casciato v. Oregon Liquor Control Com.*, 181 Or 707, 715, 185 P2d 246 (1947) (one definition of "abuse of discretion"), where the missing piece of evidence could be established by recalling one witness to confirm that the victims were employed in a full-time capacity. We therefore reject defendant's first four assignments of error.

In his fifth assignment of error, defendant challenges the consecutive sentences that the trial court imposed on Counts 1 and 2 of the case involving the pickup truck attack. Count 1 charged defendant with using his truck in an attempt to murder the victim and Count 2 charged defendant with first-degree assault for the same driving incident.[1] Defendant argues that the trial court erred in its application of ORS 137.123(5):

---

[1] Count 1 does not specify whether it refers to defendant's act of driving the truck into the victim or to his act of subsequently beating him. The parties agree, however, that the record establishes that Count 1, like Count 2, refers to the driving and not to the beating.

"The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim * * * than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

Defendant contends that the trial court erred under that statute "because the evidence indicated that there was just one criminal episode and one act committed for a single, overarching purpose (the running over [the victim] with a truck in order to kill him)" and thus that "there is insufficient evidence to find either that defendant possessed a 'willingness to commit more than one criminal offense' [as required under paragraph (a)], or that separate harms arose from being run over with a truck in precisely the same way [as required under paragraph (b)]." The state advances a two-part response to that argument: (1) that defendant did not preserve that claim of error at trial, and (2) that it does not qualify as plain error.

■ We agree with the state that defendant's ORS 137.123(5) argument was not advanced at trial. At sentencing, defendant made the following objection:

"[DEFENSE COUNSEL]: Moving to Count 3, the assault in the first degree, [I] request that the Court impose the presumptive sentence of 58 months [o]n that count.

"On Count 4, the [unauthorized use of a motor vehicle] count, the presumptive sentence there is 13 months. On both of those, we would request they run concurrent to one another. We recognize the State's arguments with regard to consecutive sentencing. Based upon—I think at this point

we would object to those running—to the consecutive sentences. I think there's some issues up in the air under *Blakely*. So for the purpose of the record, I would object to any consecutive sentenc[es]."

Over that objection, the trial court ruled as follows:

"On Count 1, the attempted murder, defendant is a—if I choose to run this sentence consecutively, and I do, I believe it's appropriate. I believe without a doubt that [defendant] had a specific intent different from the assault intent; that [defendant's] intent when [defendant] drove the car right at [the victim] wasn't just to hurt him or scare him. [Defendant] could have scared him by driving close to him. [Defendant's] intent was to kill him, definitely a different harm."

Defendant concedes that, "while * * * he did not make out the specific [ORS 137.123(5)] argument raised [on appeal], he did preserve his objection to consecutive sentences"; moreover, he argues, "given that the court below directly addressed the issue on the record, the purposes of preservation were met."

■ To preserve an argument for appeal, however, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). Our review of the record, the relevant portion of which is quoted above, discloses that defendant never made any objection to consecutive sentences based on ORS 137.123(5), the basis of his assignment of error. His argument under that statute is not preserved.

■■ Nor is the claimed error apparent on the face of the record. To qualify for the plain error exception to the preservation requirement, ORAP 5.45(1), the claimed error must be "obvious, not reasonably in dispute." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). To that end, defendant contends that this case is controlled by *State v. Warren*, 168 Or App 1, 5 P3d 1115, *rev den*, 330 Or 412 (2000), and *State v. Rettmann*, 218 Or App 179, 178 P3d 333 (2008). In *Warren*, we held that the trial court erred under ORS 137.123(5)(a) in imposing consecutive sentences for the defendant's

attempted murder and first-degree assault convictions arising from the defendant's firing a single gunshot into the victim's head at close range. We concluded that the trial court could not reasonably have inferred from that single act that the defendant had intended both to kill and to cause serious physical injury:

> "If defendant intended to kill the victim by the single shot to the victim's head, he could not have had the intent only to cause him serious physical injury. The statute requires more than an incidental violation of a separate statutory provision in the course of a commission of a more serious crime as a basis for a consecutive sentence. The firing of a single shot into the victim's head by defendant could demonstrate a willingness to commit the crime of murder, but in the absence of findings of other facts that demonstrate a willingness to commit the additional offense of first-degree assault, it was error to impose consecutive sentences under ORS 137.123(5)(a)."

*Warren*, 168 Or App at 5. In *Rettmann*, 218 Or App at 186, we held that "ORS 137.123(5)(b) does not authorize consecutive sentences for multiple offenses that arise out of a single act" because,

> "[w]here two offenses are predicated on the same act, logic will not support the conclusion that one offense caused or created a risk of causing some harm that the other offense did not. It follows that, if an act that is motivated by an intent to kill creates a risk of causing a particular harm, the same act cannot be said to create a risk of causing a different harm merely because the act can also be viewed as constituting an assault."

Defendant argues that, under *Warren*, the single act of driving the truck into the victim cannot support the trial court's conclusion that he intended both to kill the victim and to cause him injury and that the trial court did not make any other findings that support such an inference. He further asserts that, under *Rettmann*, because the assault and the attempted murder were predicated on a single act, the trial court could not have found that either caused or created a risk of causing some harm that the other did not. He submits that the trial court's error under the foregoing authority is plain and should therefore be reviewed.

The state points to our opinion in *State v. Anderson,* 208 Or App 409, 145 P3d 245 (2006), *rev den,* 343 Or 33 (2007), in arguing that the claimed error under ORS 137.123(5)(a) is not "obvious, [and is] reasonably in dispute." *Brown,* 310 Or at 355. The defendant in *Anderson,* while fleeing from a tavern that he had robbed, hit a pursuing bystander in the head with a heavy rubber mallet. The defendant was convicted of first-degree robbery and second-degree assault. The trial court imposed consecutive sentences under ORS 137.123(5)(a). *Anderson,* 208 Or App at 411-14. On appeal, the defendant contended that hitting the victim was merely incidental to the robbery and did not evince a willingness to commit a separate crime. *Id.* at 414. We observed that "the determination of whether a defendant evinced the requisite 'willingness to commit more than one criminal offense' is, as with any other determination of culpable mental states, innately factual." *Id.* at 417. We held that the case was "materially distinguishable from *Warren* in that there is no mutual exclusivity with respect to defendant's intent in engaging in that conduct," that is, the defendant could have used physical force on the victim in order to facilitate his robbery, thereby committing first-degree robbery under ORS 164.415 and, separately and additionally, intended to cause physical injury to the victim with a dangerous weapon, thereby committing second-degree assault under ORS 163.175:

> "We note, in particular, that, just as [the victim] caught up with defendant and was reaching out to stop him, another person called out that defendant had a gun, causing [the victim] to pause and turn his head. At that point, defendant pulled out the mallet and stuck [the victim] in the head.
>
> "The sentencing court could reasonably infer that, especially given [the victim's] pause and momentary inattention, defendant had a number of options: He could have kept fleeing; he could have brandished the mallet; he could have hit the momentarily vulnerable victim with the mallet so as to discourage his pursuit, but in a manner that did not present the risk of serious physical injury * * *. Instead * * * defendant hit the momentarily defenseless [victim] in the head, attempting to cause serious physical injury. The trial court, in imposing sentence, could reasonably infer that that conduct evinced a choice, a 'willingness,' to commit second-degree assault in addition to first-degree

robbery. Accordingly, the court did not err in imposing a consecutive sentence on defendant's conviction for second-degree assault."

*Anderson*, 208 Or App at 422-23 (footnote omitted).

In rendering its verdict in this case, the trial court stated:

> "[This] isn't a situation where [defendant] came around the corner and didn't see [the victim] and accidentally ran him over. He sees the individual, doesn't know him, no idea who he is, but he points the vehicle directly at [the victim], runs over him, causing, I am sure, the majority of the injuries to the shoulder and the ankle that [the victim] suffered. * * *
>
> "Intent can be inferred from conduct. And in my opinion, the intent of [defendant] here was quite clear. * * * [B]ased on the evidence presented it is my opinion that the state has proven beyond any reasonable doubt that *[defendant] * * * intended to attempt to kill [the victim]. He then intentionally assaulted [the victim] as set out in Count[ ] 2 * * * of the indictment."*

(Emphasis added.) Those comments demonstrate that the trial court might have found that defendant first intended first to kill the victim and "then," subsequently and separately, intended to seriously physically injure him. That finding is supported by evidence in the record, which shows that defendant pointed the truck at the victim, then collided with him, then ran over him, and then continued to drive the truck into the bushes with the victim trapped underneath it. To conclude that the court did *not* base the consecutive sentences on that scenario, or that the scenario was not correct, we would need to go beyond the record. We therefore agree with the state that the record in this case arguably supports the imposition of consecutive sentences under ORS 137.123(5)(a), as set out in *Anderson*, and that the claimed error is therefore not beyond dispute. In sum, we reject defendant's fifth assignment of error.[2]

---

[2] In a supplemental brief, defendant argues that the court erred in imposing consecutive sentences based on facts not found by a jury, contrary to *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), and *State v. Ice*, 343 Or 248, 170 P3d 1049 (2007), *cert granted*, _____ US _____ , 128 S Ct 1657 (2008). However, defendant expressly waived his right to a jury trial for both the guilt phase and the sentencing phase of both cases by signing documents with the following text:

In his sixth, seventh, and eighth assignments of error, defendant argues that the trial court erred in imposing upward departure sentences on each of his three convictions for third-degree assault in the urine-and-feces throwing case. The trial court sentenced defendant as follows:

"In Count 1, the defendant is a 6-A, 25 to 30 months. The aggravating factor, that current incarcerations have not deterred criminal behavior, I find substantial and compelling reasons to dispositionally depart to a 60-month Department of Corrections sentence.

"Count 2 being a separate victim, once again defendant is a 6-A, once again I find the aggravating factor being that prior incarcerations have not deterred criminal behavior. I find there to be substantial and compelling reasons to depart to a 60-month corrections sentence, to be consecutive to Count 1. * * *

"Finally, on Count 3 the defendant is a 6-A. Once again I find[ ] aggravating factors, that prior incarcerations have not deterred his criminal behavior, sentence him to 60 months Department of Corrections consecutive to Counts 1 and 2.* * *"

Defendant did not object to the departures at trial. On appeal, he argues that the error is obvious and beyond dispute because the court failed to provide "substantial and compelling" reasons for departing from the sentencing guidelines. ORS 138.222(3)(b). According to defendant, the failure of the current incarceration to prevent attacking a corrections officer is necessarily incorporated in the definition of the offense itself and therefore, under *State v. Guthrie*, 112 Or App 102, 107, 828 P2d 462 (1992) (sentencing court must show that reasons for departing were "not envisioned by the legislature in establishing the presumptive sentence"), the failure cannot be used as an aggravating factor. We agree

---

"[Defendant] does hereby elect to waive my right under the Sixth Amendment of the United States Constitution, as interpreted by the United States Supreme Court in *Blakely v. Washington*, to have a jury make all factual findings that affect the length of my sentence, including facts which the court may find are aggravating factors. I request these facts be determined by the Judge of this court alone. I give up this right on my own free will, after having discussed this matter with my attorney."

We therefore reject his *Blakely/Ice* argument.

with the state, however, that the trial court's reference to "current incarcerations," rather than "prior incarcerations," in sentencing defendant on Count 1 was inadvertent, as demonstrated by the court's subsequent statements in sentencing defendant on Counts 2 and 3 that, "once again," prior incarcerations had failed to deter defendant's criminal behavior.

Defendant argues in his reply brief, however, that, even if the court's reference to "current incarcerations" was inadvertent, the failure of "prior incarcerations" to deter defendant's criminal behavior is neither a substantial nor a compelling reason to depart from the sentencing guidelines under ORS 138.222(3). According to defendant, the only appropriate means of increasing punishment based on "prior incarcerations" is through use of the criminal history axis of the sentencing grid, which already addresses prior convictions. Defendant, however, cites no case in which this court or the Supreme Court has held that a trial court's imposition of upward departure sentences based on its finding that a defendant's prior incarcerations failed to deter criminal behavior is inappropriate. His argument is novel and, perhaps, intriguing, but such arguments are not the stuff of which plain error is made. We therefore reject defendant's argument regarding "prior incarcerations." The claimed error is far from "obvious," and we decline to address it as such. *See Brown*, 310 Or at 355.

In his ninth and final assignment of error, defendant argues that the trial court erred in imposing an upward departure sentence on Count 2 (first-degree assault) of the pickup truck attack case based on defendant's "[p]ersistent involvement in similar offenses," OAR 213-008-0002(1)(b)(D)—specifically, his prior convictions for resisting arrest, burglary, fourth-degree assault, menacing, and aggravated animal abuse. That rule provides that the sentencing court may consider as an aggravating factor:

> "Persistent involvement in similar offenses or repetitive assaults. This factor may be cited when consecutive sentences are imposed only if the persistent involvement in similar offenses or repetitive assaults is unrelated to the current offense."

The trial court explained,

> "I agree partially with [defense counsel]—certainly a number of the offenses charged here such as giving false information, no driver's license or no valid license are not person crimes; it is not even of any kind of similar character. But looking at [defendant's] history, including resisting arrest, the burglary charge referred to by [the prosecutor], Assault in the Fourth Degree, two counts of menacing and the aggravated animal abuse, I do find * * * persistent involvement by the defendant, and I find that aggravating factor to be established beyond a reasonable doubt."

On appeal, defendant makes three distinct arguments. First, he contends that the offenses on which the trial court relied were not sufficiently "similar" to qualify as "persistent involvement" under OAR 213-008-0002(1)(b)(D). Second, he asserts that, even if those offenses were sufficiently "similar," they failed to demonstrate a separate malevolent quality in defendant evidenced by the repetitive nature or pattern of his criminal behavior above and beyond his criminal history. Third, he submits that the court's stated reason for departing is not "substantial and compelling." ORS 138.222(3). We address each of those arguments in turn.

■■ To qualify as "similar offenses," crimes need not be identical but must be of "similar" type. *State v. Cornelius*, 112 Or App 98, 100-01, 827 P2d 937, *rev den*, 314 Or 176 (1992). We agree with the state that defendant's crimes qualify as sufficiently "similar" because resisting arrest, the burglary in this case, fourth-degree assault, and menacing are all similar to the "person" crime of which defendant was convicted— first-degree assault—and animal abuse, like assault, involves the abuse of a living being that can feel pain.

Defendant's second argument—that "persistent involvement" must demonstrate not only a history of prior crimes, but also a separate malevolent quality in the offender—is unavailing in light of this court's recent decision in *State v. Schenewerk*, 217 Or App 243, 174 P3d 1117 (2007), *rev den*, 344 Or 671 (2008). In that case, we expressly rejected the "separate malevolent quality" requirement as an "extraneous 'gloss' into the operative standard" and stated that

"the determination of 'persistent involvement' is straightforward: The factfinder is to determine, from the 'number and frequency' of defendant's prior convictions for similar offenses whether defendant's involvement in those offenses was so 'continuous or recurring' as to be 'persistent.' " *Id.* at 246-47 (quoting *State v. Bray*, 342 Or 711, 724, 160 P3d 983 (2007)).

 Finally, to demonstrate that its reasons are "substantial and compelling," a sentencing court must do more than simply state the OAR 213-008-0002(1) factor on which it is relying. *See State v. Wilson*, 111 Or App 147, 152-53, 826 P2d 1010 (1992). Rather, the court must explain why the circumstances are sufficiently exceptional—that is, it must show that imposing the presumptive sentence would fail to accomplish the purposes of the sentencing guidelines to "punish offenders appropriately and to ensure the security of the public." *Id.* at 149-50. If the court's explanation does not demonstrate that, we must remand for resentencing. *Id.* at 151. If adequate, we will not disturb the court's exercise of discretion. *Id.* In this case, the trial court's explanation was sufficient to demonstrate exceptional circumstances for departing because the court explained that it was departing on the basis of defendant's persistent involvement in "person crimes."

Affirmed.