Argued and submitted April 19, reversed and remanded for reconsideration
November 7, 2012

Lance A. JOHNSON,
*Petitioner*,

*v.*

DEPARTMENT OF PUBLIC SAFETY STANDARDS
AND TRAINING,
*Respondent.*

Office of Administrative Hearings
901306; A147361

293 P3d 228

George W. Kelly argued the cause and filed the briefs for petitioner.

Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R.

Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Petitioner seeks judicial review of a final order of the Department of Public Safety Standards and Training (DPSST) revoking his license as a private investigator. The order was based on a conclusion that petitioner, while working on behalf of a criminal defense attorney, interviewed crime victims without making certain disclosures mandated by Article I, section 42(1)(c), of the Oregon Constitution, as well as several other rules and statutes, including ORS 135.970(2). The constitutional provision grants crime victims "[t]he right to refuse an interview * * * request by the criminal defendant or other person acting on behalf of the criminal defendant." The statute provides:

> "If contacted by the defense, the victim must be clearly informed by the defendant's attorney, either in person or in writing, of the identity and capacity of the person contacting the victim, that the victim does not have to talk to the defendant's attorney, or other agents of the defendant, or provide other discovery unless the victim wishes, and that the victim may have a district attorney present during any interview."

ORS 135.970(2). Petitioner asserts that the constitutional provision confers a right on crime victims but imposes no corollary obligation on him, and the statute imposes a legal obligation only on defense attorneys—not their agents. We agree. He also maintains that, even if he may have violated some other rules or statutes, the board's erroneous conclusions regarding Article I, section 42(1)(c), and ORS 135.970(2) contributed to the board's decision to impose what petitioner argues was an overly severe sanction. We agree with that point as well. We therefore reverse and remand the agency order for further proceedings.

In October 2007, petitioner applied for and was granted a private investigator license by DPSST. He began working for private defense attorneys who represented indigent criminal defendants. In August 2009, responding to a complaint, DPSST filed a notice of intent to revoke petitioner's license, alleging that petitioner's contacts with victims in four separate criminal cases violated ORS 135.970(2), Article I, section 42, and DPSST's rules

regulating ethics and moral fitness standards for private investigators.[1] Petitioner requested a contested case hearing pursuant to ORS 183.745.

The hearing was held before an administrative law judge (ALJ) on May 3, 2010. One of the witnesses, Detective Mott, a police officer for the City of Dallas, testified about his involvement in one of the cases, *State v. Benkle*, a criminal sex abuse case in which petitioner worked as an investigator for the defendant's attorney. Mott testified about statements that some of the juvenile victims and their parents made to Mott and another detective about their contacts with a private investigator who misrepresented himself as a police officer, and Mott identified that investigator as petitioner. Petitioner objected to the admission of these statements as hearsay. The ALJ overruled the objections, pointing out that hearsay was not categorically inadmissible in administrative hearings. Mott also testified that he personally observed petitioner misrepresenting his status to one of the victims and the victim's mother by telling them that he worked for the City of Dallas and the State of Oregon.

At the end of the hearing, the ALJ left the record open so that petitioner and DPSST could submit written closing arguments. On June 15, 2010, DPSST filed a "Second Amended Notice of Intent to Revoke License," adding another statute, ORS 703.450(15), to the list of provisions that petitioner allegedly violated.[2] During a telephone status conference on July 20, 2010, the parties agreed that the record could be closed; petitioner's counsel stated, "I do not know that there is any need [from] my point to put on any more evidence."

Three months later, the ALJ issued a proposed order. The ALJ concluded that (1) petitioner's conduct while

---

[1] DPSST's first notice of intent to revoke petitioner's license contained facts regarding petitioner's investigations in three criminal cases. DPSST added facts regarding a fourth case in its amended notice.

[2] ORS 703.450(15) provides that a licensed investigator,

"[u]nless performing services for a law enforcement or other governmental agency, may not attempt to give an impression that the investigator is connected in any way with a law enforcement or other governmental agency by any statement or activity, including using a title, wearing a uniform, using a badge or insignia or using an identification card or by any failure to make a statement or act."

investigating crimes on behalf of a defense attorney violated ORS 135.970(2) and Article I, section 42; (2) petitioner failed to "[o]bey all laws in the pursuit of [his] investigations" in violation of OAR 259-061-0190(1); (3) petitioner failed to "report the truth in the performance of [his] professional duties" in violation of OAR 259-061-0190(9); (4) petitioner's conduct demonstrated a lack of moral fitness in violation of OAR 259-061-0040(2)(b); (5) petitioner's conduct while investigating cases on behalf of a defense attorney gave "an impression that [he was] connected *** with a law enforcement or other governmental agency" in violation of ORS 703.450(15); and (6) the appropriate penalty for the violations was revocation of petitioner's private investigator's license and imposition of a civil penalty and costs.

Thereafter, on September 27, 2010, petitioner wrote a letter to the ALJ stating that he had new evidence that exonerated him from the charges: new statements by petitioner, statements from the parents and juvenile victims in the *Benkle* case indicating that they had never met petitioner, and a witness statement discrediting the complaining victim in *State v. Young*, one of the other cases. On the same day, petitioner filed a "[m]otion to reopen, to reconsider, and supplement to exceptions," requesting that the record be reopened to include the new evidence. The ALJ, after receiving petitioner's letter, wrote to petitioner (copy to DPSST) to inform petitioner that the ALJ's involvement with the case had ended upon issuing the September 14 proposed order and that he no longer had any jurisdiction over the matter. Subsequently, on December 16, 2010, DPSST denied petitioner's motion, concluding that the ALJ's proposed order was supported by the record and that petitioner had "not shown good cause why the new evidence he proposes to offer could not have been presented at the hearing." Accordingly, DPSST adopted the ALJ's proposed order as its final order and revoked petitioner's license.

Petitioner advances four assignments of error on review. He first argues that he did not violate the Oregon Constitution or ORS 135.970(2) because neither provision imposes an obligation on private investigators; further, because several of the other provisions incorporate violations of the law as elements, he did not violate those

either. Second, he contends that DPSST erred by denying his motion to reopen the record. Third, he maintains that the ALJ's findings of fact were not supported by substantial evidence because they derived from Mott's hearsay testimony. Finally, he argues that DPSST erred by revoking his license and imposing a civil penalty and costs.

We begin with petitioner's first assignment of error. We agree with petitioner that Article I, section 42(1)(c), while perhaps obliquely relevant to this case as background or context, cannot be read to impose a legally enforceable obligation on him. The provision confers on crime victims the right to

"refuse an interview, deposition or other discovery request by the criminal defendant or other person acting on behalf of the criminal defendant provided, however, that nothing in this paragraph shall restrict any other constitutional right of the defendant to discovery against the state[.]"

A crime victim's right to refuse an interview request does not incorporate or imply that a person requesting the interview has a duty to inform the victim of that right, any more than a person's right to be free from unreasonable searches means that a police officer has a duty to inform a person of that right when requesting consent to search.[3] If there is such a duty, its source must be statutory.

DPPST maintains that ORS 135.970(2) is that source. We disagree. That provision concerns communication with crime victims and was proposed by initiative and enacted by the voters as part of Ballot Measure 10 (1986), the "Crime Victims' Bill of Rights," in the November 1986 general election. Or Laws 1987, ch 2, § 3. The statute provides, in part:

"If contacted by the defense, the victim must be clearly informed by the defendant's attorney, either in person or in writing, of the identity and capacity of the person contacting the victim, that the victim does not have to talk to the defendant's attorney, or other agents of the defendant, or

---

[3] The right to be free from self-incrimination under Article I, section 12, of the Oregon Constitution *does* impose a duty to inform. *State v. Vondehn,* 348 Or 462, 475, 236 P3d 691 (2010). DPSST does not point to anything, nor are we aware of anything, in the text or case law of Article I, section 42, or the case law interpreting it, that would lead us to conclude that a similar obligation inheres in that provision.

provide other discovery unless the victim wishes, and that the victim may have a district attorney present during any interview."

Petitioner contends that the obligations created by ORS 135.970(2) are imposed solely on "the defendant's attorney," not on a private investigator working for the defense, because the plain language of the statute requires specifically that "the victim must be clearly informed by *the defendant's attorney* \* \* \* of the identity and capacity of the person contacting the victim." (Emphasis added.) DPPST, on the other hand, contends that, although ORS 135.970(2) imposes specific requirements on "the defendant's attorney," the requirements (as the ALJ concluded) "rationally should extend to agents of the attorney who contact victims on that attorney's behalf, if the attorney had not otherwise informed the victims of their rights under the statute." To hold otherwise, the ALJ concluded, would "allow defense attorneys a means to circumvent the intent of the legislature and deprive victims of their rights under the Oregon Constitution."

DPSST's interpretation cannot be reconciled with the unambiguous plain text of the statute. That text, to repeat, requires that, "[i]f contacted by the defense, the victim must be clearly informed *by the defendant's attorney*, either in person or in writing, of the identity and capacity of the person contacting the victim." ORS 135.970(2) (emphasis added). The statute does not state that the victim must be informed by "the defense" or "other agents of the defendant," although, those terms appear elsewhere in subsection (2)— "[i]f contacted by *the defense*" and "the victim does not have to talk to the defendant's attorney, or *other agents of the defendant*." The terms "the defense" and "other agents of the defendant" are broader in scope than "the defendant's attorney" and likely would include a private investigator working on behalf of the defendant's attorney. Yet, the text clearly states that "the victim must be clearly informed by *the defendant's attorney*," not "the defense" or "other agents of the defendant."

As the Supreme Court has stated on several occasions, different words used in the same statute generally mean different things. *See, e.g.*, *Dept. of Transportation v.*

*Stallcup*, 341 Or 93, 101, 138 P3d 9 (2006) (use of different terms in real estate appraisal statute suggests that each was intended to have different meaning); *State v. Glaspey*, 337 Or 558, 564-65, 100 P3d 730 (2004) (use of different terms in assault statute—"victim" in one provision and victim's "child" in the other—means that one is not the same as the other); *State v. Keeney*, 323 Or 309, 316, 918 P2d 419 (1996) (holding that the legislature intends different meanings when it uses different terms in a statute). Here, the different words are not only in the same statute, they are in the same sentence. Accordingly, because ORS 135.970(2) uses three different terms to describe different groups of people related to a criminal defendant—"the defense," "the defendant's attorney," and "other agents of the defendant"— we must assume that the voters intended that those terms mean different things.

We also note that the enactment history of ORS 135.970 is not helpful in discerning the voter's intent because it contains inconsistent explanations of the purpose of the provision at issue. The ballot title for Measure 10, contained in the voters' pamphlet for the November 1986 general election, explains that the measure "[p]rotects victims from pretrial contact by *criminal defendants*." Official Voters' Pamphlet, General Election, Nov 4, 1986, 49 (emphasis added). However, the separate explanatory statement following the text of the measure, which was provided by a committee composed of two members appointed by the Secretary of State, two members appointed by the chief petitioners, and a fifth member appointed by the other four, informed the voters that:

"The measure would:

"* * * * *

"Require *representatives of defendant*, when contacting to [*sic*] victim to:

"—Identify themselves in writing or in person as representing defendant;

"—Notify victim that victim is not required to talk to them;

"—Notify victim that victim may have prosecutor present during interview."

Voters' Pamphlet at 52 (emphasis added). The two explanations are inconsistent; one refers to contact by "criminal defendant[s]" and the other to contact by "representatives of defendant." Further, neither term aligns with the terms used in the statute: "the defense," "the defendant's attorney," and "other agents of the defendant." In light of this inconsistency and the overarching precept that the best evidence of voter intention is the text itself, *State v. Gaines*, 346 Or 160, 173, 206 P3d 1042 (2009), we conclude that the voters did not intend to impose an obligation on anyone other than "the defendant's attorney."

We are also unpersuaded by DPSST's argument that we should interpret ORS 135.970(2) to impose an obligation on all representatives of the defense attorney because the statute "is intended to ensure the protection of the rights established under Article I, section 42, of the Oregon Constitution," for the obvious reason that enactment of the statute in 1987 (Or Laws 1987, ch 2, § 3) preceded enactment of the constitutional amendment by 12 years (Or Laws 1999, HJR 87, adopted by the people Nov 2, 1999).

In sum, we conclude that ORS 135.970(2) does not impose a duty on anyone other than the defendant's attorney to inform the victim "of the identity and capacity of the person contacting the victim" and the victim's other rights under the statute. Petitioner, a private investigator working for a defendant's attorney, could not have violated ORS 135.970(2) by failing to inform the victim himself.[4]

Petitioner argues that because he did not violate ORS 135.970(2), he did not violate DPSST's rules or ORS 703.450(15).[5] DPSST contends that these violations should be independently affirmed. Our review of the ALJ's proposed order, which was adopted by DPSST as its final order, reveals that it relies on petitioner's erroneous violation of ORS 135.970(2) to conclude that petitioner also violated

---

[4] Nor do we believe that requiring attorneys to provide the necessary information to victims would impose an undue burden on counsel. Under certain circumstances, a lawyer may already be held responsible for the conduct of a nonlawyer assistant who communicates with persons in a fashion that, if committed by the lawyer, would violate Oregon Rule of Professional Conduct 4.2 or 4.3 (governing communication with represented or unrepresented persons).

[5] ORS 703.450(15) is set out above at 253 Or App at 310 n 2.

OAR 259-061-0190(1) and (9), OAR 259-061-0040(2)(b)(B), (C), and (D), and ORS 703.450(15). The proposed order states that "DPSST is pursuing revocation of the license *** for entirely separate reasons, *i.e.*, [petitioner's] lack of good moral fitness and violations of other DPSST rules," but states that "these reasons incorporate a violation of ORS 135.970." On the record before us, we cannot determine whether DPPST would have imposed the same sanction—revocation of petitioner's license, a civil penalty of $1,000, and costs of $12,438—based on grounds independent of the violation of ORS 135.970(2) and Article I, section 42(1)(c). Therefore, we reverse and remand for reconsideration regarding petitioner's alleged violations of DPSST's rules and ORS 703.450(15). *See* ORS 183.482(8)(a)(B) (where an agency has erroneously interpreted a provision of law, the court shall remand the case for further action under a correct interpretation of the law).

Because the issue is likely to arise on remand, we also address petitioner's second assignment of error regarding DPSST's denial of his motion to reopen the record. Although neither statutes nor case law establish our standard of review for such motions, we conclude that allowing or denying a motion to reopen the record is committed to the discretion of the agency.[6] *Cf. State v. Agee*, 223 Or App 729, 734, 196 P3d 1060 (2008) (in criminal case, trial court did not abuse its discretion in allowing state's motion to reopen its case to present additional evidence after closing arguments in a bench trial); *Jett v. Ford Motor Company*, 192 Or App 113, 124, 84 P3d 219, *rev den*, 337 Or 160 (2004) (in civil context, "[w]e review rulings on motions to reopen a case in order to present additional evidence for abuse of discretion"); *OR-OSHA v. Tom O'Brien Construction Co., Inc.*, 148 Or App 453, 461 n 9, 941 P2d 550

---

[6] Petitioner "presumes that this court reviews in a manner similar to that which is set out in ORS 183.482(5)." ORS 183.482(5), however, permits this court "on review of a contested case, before the date set for hearing," to grant a party "leave to present additional evidence" if the evidence is "material" and if "there were good and substantial reasons for failure to present it" at the hearing. However, ORS 183.482(5) is procedurally inapplicable to this case. Here, petitioner's motion to reopen the record to present additional evidence occurred at the agency level *before* judicial review to this court. Additionally, the statute refers to this court's ability to allow additional evidence before oral argument is scheduled; it has no bearing on our standard of review of the agency's action.

(1997), *aff'd*, 329 Or 348, 986 P2d 1171 (1999) (on judicial review of ALJ's order for the Workers' Compensation Board, "we review the ALJ's decision not to reopen the record for abuse of discretion," citing OAR 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). Accordingly, we review the director's exercise of discretion to determine whether it exceeded the agency's authority, was inconsistent with agency practice, or violated a statute or constitutional provision. ORS 183.482(8)(b).

Petitioner contends that the new evidence contained in his motion to reopen the record was material because it supported his theory that Mott wrongly assumed that petitioner was the person who contacted the victims in the *Benkle* case. He also contends that he was unable to present the evidence before the close of the record for several reasons: because he did not know that DPSST intended to rely on hearsay evidence; because, not knowing the identities of the *Benkle* victims at the time of the hearing, he could not have found them; and because he had been "told by DPSST not to be in contact with the alleged victims." Additionally, petitioner argues that DPSST's denial of his motion to reopen the record violated ORS 183.417(8), which states:

> "The officer presiding at the hearing shall ensure that the record developed at the hearing shows a full and fair inquiry into the facts necessary for consideration of all issues properly before the presiding officer in the case and the correct application of the law to those facts."

First, we note that, due to the timing of petitioner's motion to reopen the record, ORS 183.417(8) is inapplicable. As stated above, the hearing before the ALJ was held on May 3, 2010, and, at the end of the hearing, the ALJ left the record open. On July 20, the parties agreed that the record could be closed, and the ALJ issued his proposed order on September 14. When petitioner filed his motion with the ALJ requesting that the record be reopened, the ALJ had already forwarded the record to DPSST and no longer had jurisdiction over the case. DPSST ultimately decided to deny the motion when it issued the final order on December 16, 2010. Thus, at the time petitioner's motion was filed with the ALJ, over four months after the hearing,"[t]he officer presiding at the hearing," the ALJ, was powerless to grant it.

We are also unpersuaded by petitioner's arguments as to why he was unable to present the new evidence before the close of the record. Petitioner contends that he did not know that DPSST would rely on hearsay testimony of the juvenile victims in the *Benkle* case. Yet, ORS 183.450(1) provides that hearsay evidence is admissible in administrative proceedings. *Reguero v. Teacher Standards and Practices*, 312 Or 402, 417, 822 P2d 1171 (1991). There is also evidence in the record that petitioner had notice that DPSST intended to rely on statements by the *Benkle* victims: DPSST's notice of intent to revoke petitioner's license and its amended notice contained facts about petitioner's alleged contacts with the juvenile victims in the *Benkle* case and identified the victims by their initials. In addition, a few months before the hearing, petitioner responded to DPSST's request for admissions, which contained the full names of the *Benkle* juvenile victims. From the record, then, we conclude that petitioner knew or should have known the identity of the hearsay witnesses before the hearing. Regarding the statement of the witness discrediting the victim in the *Young* case, petitioner similarly has not shown why the statement could not have been obtained and submitted before the close of the record. Finally, we note that, at no time during the hearing itself, including during Mott's testimony, did petitioner deny that he had met the victims. Thus, we cannot conclude that DPSST abused its discretion in denying petitioner's motion to reopen the record.

Because DPSST erred in interpreting ORS 135.970(2) and Article I, section 42(1)(c), we reverse DPSST's final order revoking petitioner's license and remand for reconsideration of petitioner's alleged violations of OAR 259-061-0190(1) and (9), OAR 259-061-0040(2)(b)(B), (C), and (D), and ORS 703.450(15).[7]

Reversed and remanded for reconsideration.

---

[7] We reject without discussion petitioner's contention that the ALJ's findings are not supported by substantial evidence. And in light of our disposition, we need not address the assignment of error imposing sanctions.